Jerry ELLIS

v.

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY and Frank J. Dovidio.

No. 90–33–Appeal.

Supreme Court of Rhode Island.

Feb. 11, 1991.

John W. Rannucci, Providence, for plaintiff.

James E. Kelleher, Revens & DeLuca, Ltd., Warwick, for defendants.

## OPINION

KELLEHER, Justice.

This appeal involving Superior Court civil litigation concerns a motor-vehicle collision that occurred on June 7, 1988. On that day, a bus owned by the defendant Rhode Island Public Transit Authority (RIPTA) and operated by Frank J. Dovidio (Dovidio), a RIPTA employee, came into contact with an uninsured motor vehicle. The plaintiff, Jerry Ellis (Ellis), was a passenger on the RIPTA bus at the time of the collision and allegedly sustained injuries as a result of the collision.

In count 1 of his amended complaint, Ellis alleges that the negligence of Dovidio and RIPTA caused his injuries. Alternatively, count 2 of the amended complaint alleges that the negligence of the owner and operator of the uninsured vehicle was the cause of Ellis's injuries. Count 2 further avers that RIPTA was required to provide uninsured motorist protection to its passengers in accordance with G.L.1956 (1989 Reenactment) § 27–7–2.1, Rhode Island's uninsured-motorist statute. Thus Ellis argues that RIPTA's refusal to recognize Ellis's uninsured motorist claim constituted negligence and violated the uninsured motorist mandate of § 27–7–2.1, thereby depriving Ellis of the protection afforded to him by that statute.

In response, RIPTA filed a motion to dismiss count 2 of the amended complaint for failure to state a claim upon which relief could be granted under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. Since it was a "self-insurer" under G.L.1956 (1982 Reenactment) § 31–33–9, RIPTA argued, it was exempt from the uninsured-motorist mandate of § 27–7–2.1 and therefore had no obligation to provide its passengers with uninsured-motorist protection. The trial justice agreed with RIPTA and granted its motion to dismiss after determining that the uninsured-motorist statute was inapplicable to RIPTA as a self-insured public carrier. Ellis then filed this timely appeal.

The sole issue before us, which is one of first impression in this jurisdiction, is whether a public carrier that is self-insured pursuant to § 31–33–9 is obligated to afford uninsured-motorist protection to its passengers pursuant to Rhode Island's uninsured-motorist statute, § 27–7–2.1. Both parties to this appeal raise numerous arguments in support of their positions. We believe, however, that only a select few of these arguments warrant our consideration. In arguing that the trial justice erred in finding § 27–7–2.1 inapplicable to self-insurers, Ellis now asserts that "[g]iven the remedial nature of [§ ] 27–7–2.1 and the public policy considerations leading to its enactment, rules of statutory construction require that the liability self-insuring carrier [RIPTA] be held subject to the statute's [uninsured-motorist] mandate." In support of this contention, Ellis cites a plethora of cases from foreign jurisdictions that have held that statutes requiring uninsured-motorist coverage are applicable to self-insurers. Not surprisingly RIPTA cites an equally abundant number of cases holding to the contrary, and RIPTA further asserts that the language of § 27–7–2.1 is clear and unambiguous and that its plain meaning only proscribes the issuance of insurance *policies* in the state without uninsured-motorist coverage and therefore does not apply to self-insurers because no policy of insurance exists in such cases. Finally

RIPTA argues that even if public policy favors compelling self-insurers to carry uninsured-motorist coverage, the codification of this requirement is better left to the Legislature, not the courts.

■ Before reaching the merits of Ellis's appeal, we are reminded that when reviewing a trial justice's order granting a Rule 12(b)(6) motion to dismiss, this court examines the allegations contained in the plaintiff's complaint, assumes them to be true, and views them in the light most favorable to the plaintiff. *See Gagnon v. State*, 570 A.2d 656, 657 (R.I.1990); *Rhode Island Affiliate, ACLU v. Bernasconi*, 557 A.2d 1232, 1232 (R.I.1989). The motion will then be granted only when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim. *See Gagnon*, 570 A.2d at 657; *Bernasconi*, 557 A.2d at 1232.

The resolution of any question pertaining to uninsured-motorist coverage must naturally begin with an examination of the statute itself. Rhode Island's uninsured-motorist statute, § 27–7–2.1, provides in pertinent part:

"No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles."

The statute governing self-insurers, § 31–33–9, provides as follows:

"(a) Any person in whose name more than twenty-five (25) vehicles are registered in this state may qualify as a self-insurer by obtaining a *certificate of self-insurance issued by the registry* as provided in subsection (b) of this section.

"(b) The registry may, in its discretion, upon the application of such a person, issue a *certificate of self-insurance* when it is satisfied that such person is possessed and will continue to be possessed of ability to pay judgment obtained against such person. Such certificate may be issued authorizing a person to act as a self-insurer for either property damage or bodily injury, or both.

"(c) Upon not less than five (5) days' notice and a hearing pursuant to such notice, the registry may upon reasonable grounds cancel a *certificate of self-insurance*. Failure to pay any judgment within thirty (30) days after such judgment shall have become final shall constitute a reasonable ground for the cancellation of a certificate of self-insurance." (Emphasis added.)

When dealing with statutory interpretation, this court has said on numerous occasions that when the language of the statute is unambiguous and expresses a clear and sensible meaning, no room for statutory construction or extension exists, and we are required to give the words of the statute their plain and obvious meaning. *O'Neil v. Code Commission for Occupational Safety and Health*, 534 A.2d 606, 608 (R.I.1987). Such meaning is presumed to be intended by the Legislature, and the statute must be applied literally. *In re Advisory Opinion to the Governor*, 504 A.2d 456, 459 (R.I.1986). However, even in circumstances in which a statute is clear and unambiguous, a statute will not be interpreted literally when such a construction will lead to an absurd result or one at odds with the legislative intent. *See Sugarman v. Lewis*, 488 A.2d 709, 711 (R.I. 1985).

■ The uninsured-motorist statute states that "[n]o *policy* insuring against loss resulting from liability * * * shall be delivered or issued for delivery in this state" without uninsured-motorist protection. (Emphasis added.) Section 27–7–2.1. At issue is whether, through the use of the word "policy," the General Assembly intended that self-insurers under § 31–33–9 fall within the ambit of § 27–7–2.1's unin-

sured-motorist mandate. Ellis argues that this court should avoid the "narrow and technical analysis" used by courts of foreign jurisdictions that have decided the same issue on the basis of a "dictionary definition of the word 'policy.'" As was noted earlier, however, where the words of a statute are clear and unambiguous, they must be afforded their plain and ordinary meaning. Such meaning is presumed to be intended by the Legislature. Black's defines "policy" as a "general term used to describe all contracts of insurance." Black's Law Dictionary 1157 (6th ed.1990). "Policy of insurance" is further defined as an "instrument in writing, by which one party (insurer), in consideration of a premium, engages to indemnify another (insured) against a contingent loss, by making him a payment in compensation, whenever the event shall happen by which the loss is to accrue. Contract whereby insurer, in return for premiums, engages, on happening of designated event, to pay certain sum as provided." *Id.*

With this definition in mind, Ellis now urges this court to include a "certificate of self-insurance" in our reading of the word "policy." This we decline to do. A policy of insurance is contractual in nature. Two parties, the insurer and the insured, enter into an agreement whereby the insurer agrees, in exchange for the insured's payment of premiums, to make payments to or on behalf of the insured upon the happening of an event. In the case of a self-insurer, no contract of insurance exists. Under the self-insurer statute, the Registry of Motor Vehicles "issue[s] a certificate of self-insurance when it is satisfied that [a] person is possessed and will continue to be possessed of ability to pay [a] judgment obtained against such person." Section 31–33–9(b). No consideration is tendered to the registry by the self-insurer, nor does the registry make payments to or on behalf of the self-insurer when the latter incurs liability. The certificate merely certifies that the person or business to whom it is issued is financially responsible and can pay judgments rendered against it. We therefore believe that a certificate of self-insurance is not a "poli-

cy" under § 27–7–2.1 requiring the mandatory provision of uninsured-motorist protection.

Our position that the mandate of § 27–7–2.1 applies only to liability-insurance policies issued by insurance companies and not to self-insurers finds support in this court's past proclamations. As RIPTA correctly points out, in *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 147, 282 A.2d 584, 587 (1971), this court referred to § 27–7–2.1 as "legislation requiring *automobile insurance companies* doing business in this state to offer a willing motorist the opportunity to recover damages for his bodily injuries[ ]" caused by uninsured motorists. (Emphasis added.) We further stated that "[o]ur statute requires the *insurance industry* to make uninsured motorists coverage available in this state. It speaks of a 'policy' and 'protection' for those insured thereunder * * *." (Emphasis added.) 109 R.I. at 152, 282 A.2d at 589. Also, in *American Universal Insurance Co. v. Russell*, 490 A.2d 60, 62 (R.I.1985), we espoused the view that "[t]he legislature in enacting § 27–7–2.1 obviously contemplated that an offer of uninsured motorist coverage be made *by the insurance company or its agent* with the issuance of each *automobile policy * * *.*" (Emphasis added.) Similarly, in other cases this court has discussed the obligations § 27–7–2.1 imposes on insurance agents selling automobile-liability insurance on behalf of an insurance company. *See, e.g., Dubreuil v. Allstate Insurance Co.*, 511 A.2d 300, 301–02 (R.I. 1986). In light of our past interpretation of § 27–7–2.1, we do not believe the Registry of Motor Vehicles under § 31–33–9 is part of the "insurance industry" at which the focus of § 27–7–2.1 is aimed.

To further support his position, Ellis cites numerous decisions from foreign jurisdictions where courts, relying on public policy, have extended the requirement of uninsured-motorist coverage under a mandatory uninsured-motorist statute to self-insurers even in the absence of express statutory language compelling this result. Those precedents, however, are readily dis-

tinguishable from the instant controversy. In each of the jurisdictions cited by Ellis, *all* motor vehicles were required either to carry liability insurance or to obtain a certificate of self-insurance. Liability-insurance policies, by statute, were required to provide protection for injuries sustained as a result of the negligence of uninsured motorists. Thus those courts reasoned that even in the absence of express statutory language stating such, their individual Legislatures intended that *all* motorists, including self-insurers, carry uninsured-motorist coverage. *See, e.g., Twyman v. Robinson*, 255 Ga. 711, 712, 342 S.E.2d 313, 315 (1986)(certificate of self-insurance is "substantial equivalent" of a no-fault policy, thus uninsured-motorist coverage is implied as contained in plan of self-insurance); *Transport of New Jersey v. Watler*, 161 N.J.Super. 453, 463, 391 A.2d 1240, 1243 (1978), *aff'd*, 79 N.J. 400, 401, 400 A.2d 61, 61 (1979)(statute requiring all automobile-liability policies to include uninsured-motorist coverage applies to all vehicles registered or principally garaged in state); *Allstate Insurance Co. v. Shaw*, 52 N.Y.2d 818, 821–22, 418 N.E.2d 388, 389, 436 N.Y.S.2d 873, 874 (1980)(self-insurer same as "vehicle for hire" under statute requiring uninsured-motorist coverage with surety bond or liability insurance); *Modesta v. Southeastern Pennsylvania Transportation Authority*, 503 Pa. 437, 445, 469 A.2d 1019, 1024 (1983)("self insurance" equivalent to "liability insurance policy" under mandatory No Fault Act requiring provision of uninsured-motorist coverage).

The policy concerns existing in the aforementioned cases that led those courts to impose uninsured-motorist coverage on self-insurers are not present in the controversy before us. Rhode Island is one state in a small minority of jurisdictions that does not require its motorists to carry mandatory liability insurance. Consequently a substantial number of motorists in this state operate motor vehicles without any insurance whatsoever. As a result the General Assembly has become acutely aware of the great risk of injury presented to motorists in this state by the negligence of uninsured motorists. This concern manifested itself in the 1987 amendments to § 27–7–2.1 wherein the General Assembly made mandatory the formerly optional provision regarding uninsured-motorist bodily-injury coverage. At present any policy issued or delivered in this state that insures against liability must also provide insurance protecting against bodily injury caused by the negligence of an uninsured motorist.

■ The General Assembly, however, stopped short of requiring mandatory liability and uninsured-motorist coverage for all vehicles registered or principally garaged in the state. Thus the insurance scheme in Rhode Island continues to function on a purely voluntary basis. No motorist, including RIPTA, is required by law to obtain any insurance whatsoever, whether it be liability insurance or a certificate of self-insurance.

If the General Assembly required all motorists to insure against liability *and* the negligence of uninsured motorists, it would seem to follow that, absent a statutory exclusion to the contrary, a self-insurer would also have to carry uninsured-motorist coverage because to hold otherwise would allow any motorist to circumvent the requirements of the mandatory uninsured-motorist law simply by opting for a certificate of self-insurance instead of liability insurance. This reasoning was followed by the courts in those jurisdictions cited by Ellis that required self-insured public carriers to obtain uninsured-motorist protection for its passengers.

■ However, under Rhode Island's voluntary insurance scheme, this logic necessarily must fail. Although it was not required to do so by law, RIPTA obtained a certificate of self-insurance to ensure that anyone injured by its negligence would be able to recover damages for injuries sustained. In addition to protecting the commonweal of its passengers and the motoring public, RIPTA could also conserve its assets by obtaining a certificate of self-insurance instead of expending them on insurance premiums. Indeed, the trial justice, when ruling on the matter, stated:

"It seems that the registry and the legislature providing [for the ability to self-insure], particularly as to [RIPTA], has made a policy decision that those of us who use the public transportation do so under all of the same conditions * * * it is apparent that the legislature has indicated that those who can qualify and who are issued certificates of self-insurance, * * * particularly public agencies, should be able to conserve their assets for the benefit of the consuming public."

By voluntarily obtaining a certificate of self-insurance, RIPTA therefore could provide a fund from which to pay persons injured by its negligence in a way compatible with RIPTA's financial resources. Since RIPTA was under no obligation to procure insurance of any kind, RIPTA's obtaining a certificate of self-insurance cannot be viewed as an attempt to circumvent any legal duty owed under the uninsured-motorist statute.

■ As Ellis correctly points out, this court has stated in *DiTata v. Aetna Casualty and Surety Co.*, 542 A.2d 245, 247 (R.I.1988), that the primary public-policy concern underlying the uninsured-motorist mandate of § 27–7–2.1 is to provide protection for those who have attempted to protect the public interest and themselves by purchasing insurance. It may well be, as Ellis argues, that the public-policy considerations underlying the statute may apply to the self-insuring public carrier RIPTA with force equal to or greater than that which applies to other motorists who insure against liability. However, even if this court were to agree with Ellis's position that public-policy concerns militate in favor of requiring self-insured public carriers to afford uninsured-motorist protection to their passengers, we believe this determination more properly lies in the domain of the legislative, rather than the judicial, branch of government. This court will not, and indeed cannot, act as a superlegislative body and require a self-insurer to provide uninsured-motorist protection to its passengers in the absence of a statutory mandate or clearly expressed legislative intent to that effect. Although this court, when undertaking the task of statutory interpretation, must always be cognizant of the policy concerns underlying the enactment of a particular piece of legislation, "public policy" is not some magical incantation this court can invoke that allows us to abdicate our judicial role and rewrite a statute or interpret it in ways that the General Assembly clearly did not intend.

■ Finally Ellis argues that principles of common law require that § 27–7–2.1 be held applicable to RIPTA. In addition, Ellis asserts that, notwithstanding the applicability of § 27–7–2.1, RIPTA, as a common carrier, owes the highest possible duty of care to its passengers and therefore may be negligent in not affording its passengers protection from injury caused by uninsured motorists. We find these arguments to be totally devoid of merit. Ellis correctly points out that under the common law, "common carriers are charged with the highest degree of care in preventing injury to their passengers." *Shipman v. United Electric Railways Co.*, 68 R.I. 39, 42, 26 A.2d 478, 479 (1942). However, this duty is no higher than " 'consistent with the orderly conduct of their business with respect to all matters *under their control * * *.' "* (Emphasis added.) *Id.* Thus a common carrier, in the conduct of its own affairs, has always owed the highest duty of care to its passengers. A search of Rhode Island case law, however, fails to reveal any common-law duty on the part of a common carrier to insure against the negligence of uninsured motorists. Since no statutory or common-law duty exists that requires RIPTA to afford uninsured-motorist protection to its passengers, RIPTA's decision not to carry such insurance cannot be considered negligent.

■ Of course, Ellis is not left without redress for his injuries. As stated earlier, pursuant to § 31–33–9, RIPTA, as a self-insurer, is required to maintain a pool of funds from which to pay judgments rendered against it. If Ellis is able to prove negligence on RIPTA's part, as count 1 of Ellis's amended complaint alleges, Ellis will be able to recover from these funds the amount of damages to which he may be

entitled for the injuries he allegedly sustained as a result of the collision.

For the reasons stated above, Ellis's appeal is denied and dismissed and the judgment appealed from is affirmed.