[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This declaratory judgment action is before the court on plaintiff's motion for summary judgment. The parties have submitted an agreed statement of facts and now seek resolution of a legal question requiring an interpretation of the Rhode Island Insurers' Insolvency Fund Act, R.I. Gen. Laws section 27-34-1 etseq. Specifically, this court is asked to determine whether defendant Rhode Island Public Transit Authority (RIPTA) is an "insurer" within the meaning of the Act. Jurisdiction is pursuant to R.I. Gen. Laws section 9-30-1, et seq., the Uniform Declaratory Judgments Act.
FACTS AND TRAVEL
Plaintiff Rhode Island Insurers' Insolvency Fund (RIIIF or "the Fund") is a nonprofit unincorporated legal entity that was created by the Act. See R.I. Gen. Laws section 27-34-6. The function of the Fund is to make payments to persons with valid claims against insurers who are members of the Fund but who have become insolvent. The Fund thus acts as an insurer of last resort to prevent financial loss or excessive delay in payment to bonafide claimants. See R.I. Gen. Laws section 27-34-2.
Defendant RIPTA has filed a claim with the Fund as a result of an accident involving one of its buses. On February 14, 1989, a RIPTA bus collided with a car driven by defendant Eugene Cretella. The car was owned by Eugene's mother, Janet Cretella. The accident resulted in an injury to Tammy Beauchamp, who was a passenger in the car. Beauchamp and Eugene Cretella sued RIPTA for damages. RIPTA then filed a third party complaint against the Cretellas, alleging negligence and seeking indemnification and/or contribution for any judgment entered against RIPTA. A jury verdict was rendered in favor of plaintiffs but attributed 37% of the fault to Eugene Cretella and 63% to RIPTA. As a result, RIPTA was required to pay $4800 plus interest and costs to Beauchamp and $3654 plus interest and costs to Eugene Cretella. RIPTA was then entitled to recover $1776 plus interest and costs from the Cretellas, due to their portion of fault.
At the time of the accident, the Cretella's were insured by American Universal Insurance Company. American Universal was found to be insolvent on January 8, 1991. Because the company was a member of RIIIF, RIPTA looked to RIIIF to cover its $1776 claim for contribution. RIPTA alleged that its claim was one which American Universal was required to defend and indemnify under the Cretellas' policy and that, due to American Universal's insolvency, it was a "covered claim" that RIIIF was obligated to pay under the Act. RIIIF contends that RIPTA's claim does not fall within the statute's definition of covered claims and filed this declaratory judgment action for a determination of the rights and obligations of the parties under the Act.
DISCUSSION
It is undisputed by the parties that RIPTA operates as a self-insurer pursuant to R.I. Gen. Laws section 31-33-9. RIIIF contends that RIPTA's self-insurer status removes its claim from the definition of "covered claims" contained in the Act. Section27-34-5 provides that:
 (8) "Covered claim" means an unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and subject to the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer on or after July 1, 1988 and:
 (a) The claimant or insured is a resident of this state at the time of the insured event . . . or
 (b) The property from which the claim arises is permanently located in this state. "Covered claim" shall not include any amount:
 . . .
 (iii) Due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise; provided that a claim for any such amount, asserted against a person insured by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurancy pool, or underwriting association, would be a "covered claim," may be filed directly with the receiver of the insolvent insurer, but in no event may such a claim be asserted against the insured of such insurer.
R.I. Gen. Laws section 27-34-5 (8)(b)(3) (emphasis added).
Plaintiff essentially argues that, as a self-insurer, RIPTA is an "insurer" for the purposes of this section and is therefore precluded from recovering monies from the Fund. While the Act defines "insolvent insurer" and "member insurer", it does not define "insurer" as used in the subsection quoted above. The Act does define "self-insured retention" and contrasts self-insured coverage with coverage provided by an "insurance company". R.I. Gen. Laws section 27-34-5 (8)(b)(15). However, this definition merely begs the question of whether a self-insurer is distinguishable from an insurance company or from any "insurer".
The plaintiff's question is one of statutory construction. The court's analysis of such an issue begins with some basic principles. It is well established that unambiguous words contained in a statute are to be given their plain and ordinary meaning. Ellis v. Rhode Island Pub. Transit Auth.,586 A.2d 1055, 1057 (R.I. 1991); D'Ambra v. North Providence SchoolComm., 601 A.2d 1370, 1374 (R.I. 1992). In addition, a statute must be given a meaning most consistent with its policies or obvious purposes. Carr. v. Mulhearn, 601 A.2d 946, 949 (R.I. 1992). These purposes and legislative intent are to be discerned by considering the act in its entirety and viewing it in light of the circumstances and purposes that motivated its passage.Krikorian v. Rhode Island Dept. of Human Serv., 606 A.2d 671, 675 (R.I. 1992). In this case, the Act itself also provides guidance by providing that it "shall be liberally construed to effect the purpose under section 27-34-2 which will constitute an aid and guide to interpretation." R.I. Gen. Laws section 27-34-4.
Plaintiff offers three arguments to support its position that RIPTA should be treated as an insurer for purposes of this Act. First, plaintiff cites Ventulett v. Maine Insurance GuarantyAss'n, 583 A.2d 1022 (Me. 1990) for the proposition that the Maine Supreme Court has treated a self-insurer as an insurer for purposes of applying a similar statute. Second, plaintiff argues that, for practical purposes, RIPTA functions the same as an insurer by:
 1) investigating, defending, and paying claims that arise in the course of business;
 2) maintaining a pool of funds from which to satisfy judgments against it; and
 3) being subject to the supervisory power of the state pursuant to R.I. Gen. Laws section 31-33-9.
Finally, plaintiff argues that treating RIPTA as an insurer would advance the purposes of the statute that created RIIIF.
With respect to plaintiff's first argument, the court does not find Ventulett to be persuasive. In that case, while the court stated that it would treat a self-insurer as an insurer, it did so because the case before it required it to apply the Maine act in conjunction with a Massachusetts workers' compensation statute which specifically included self-insurers in its definition of insurers. Accordingly, the court decided that it would treat the Massachusetts employer as an insurer in that case, in order to avoid contradicting the Massachusetts statute. No such definition or potential conflict limits the court's ability to interpret the Act in this case.
Defendant counters plaintiff's second argument by asserting that the function of a self-insurer is fundamentally different than that of an insurer. Defendant relies upon the decision of our Supreme Court in Ellis v. Rhode Island Public TransitAuthority, 586 A.2d 1055 (R.I. 1991). In Ellis the court decided that Rhode Island's uninsured motorist statute was inapplicable to self-insurers because the statute created a requirement that applied only to "policies of insurance" and that self-insurance did not result in creation of a "policy". Plaintiff attempts to distinguish Ellis from this case by arguing that the decision was grounded in a narrow and literal analysis based on the definition of a "policy". It therefore argues that Ellis provides little guidance on the broader issue, raised here, of whether a self-insurer acts as an insurer of sorts. The court disagrees. It is true that the court inEllis first looked to the dictionary definition of "policy" and contrasted that definition with a certificate of self-insurance. However, the court went on to support its decision by looking more broadly at the distinction between the nature of self-insurers and insurers:
 A policy of insurance is contractual in nature. Two parties, the insurer and the insured, enter into an agreement whereby the insurer agrees, in exchange for the insured's payment of premiums, to make payments to or on behalf of the insured upon the happening of an event. In the case of a self-insurer, no contract of insurance exists.
Under the self-insurer statute, the Registry of Motor Vehicles "issue[s] a certificate of self-insurance. . . ." No consideration is tendered to the registry by the self-insurer, nor does the registry make payment to or on behalf of the self-insurer when the latter incurs liability. The certificate merely certifies that the person or business to whom it is issued is financially responsible and can pay judgments rendered against it.
586 A.2d at 1058 (citation omitted) (emphasis added). In other words, the court implied that self-insurance is not a type of insurance at all, but rather certification that the business that holds it has sufficient assets that it does not need insurance.
The functional distinction between insurers and self-insurers was also recognized by the Supreme Court of Iowa in IowaContractors Workers' Compensation Group v. Iowa InsuranceGuaranty Ass'n, 437 N.W.2d 909 (Iowa 1989). That case presented an issue related to that presented here: whether a group of employers that pool their assets for self-insurance constitutes an insurer within the meaning of an act creating an insurance guaranty fund. In addressing this question, the Iowa court, like the court in Ellis, focused on the contractual nature of the insurance relationship. It also looked to the concept of risk transference, the hallmark of the insurance relationship. Because members of self-insurance groups retained the risk of their own losses, the court concluded that they do not act as insurers at all. 437 N.W.2d at 917. This court finds this reasoning persuasive when applied to individual self-insurers as well. Because self-insurers retain the risk of their own loss, they act in a fundamentally different manner than do insurers and should not be treated as insurers, absent an indication of legislative intent to treat them the same. This decision is consistent with, and supported by, the distinctions between insurers and self-insurers recognized by the court in Ellis.
Finally, with respect to plaintiff's argument that the policy behind the RIIIF statute would best be served by treating self-insurers as insurers, the court refers plaintiff to the following language contained in Ellis:
 It may well be . . . that the public-policy considerations underlying the statute may apply to the self-insuring public carrier RIPTA with force equal to or greater than that which applies to other motorists who insure against liability. However, even if this court were to agree . . . that public-policy concerns militate in favor of requiring self-insured public carriers to afford uninsured-motorist protection to their passengers, we believe this determination more properly lies in the domain of the legislative, rather than the judicial, branch of government. This court will not, and indeed cannot, act as a superlegislative body . . . in the absence of a statutory mandate or clearly expressed legislative intent. . . .
586 A.2d at 1060.
The statute at issue in this case does not include self-insurers among the list of insurers that are ineligible to present claims to the Fund. In the absence of clear intent on the part of the legislature to include self-insurers among the members of this group, this court declines to read them into the statute.
The court is mindful that few courts in other jurisdictions have addressed the precise issue presented in this case and that at least one court has reached a contrary conclusion to the decision reached here. While the New Jersey court has held self-insurers ineligible to collect from a similar fund, the rationale supporting that conclusion is inapplicable here.
The New Jersey court first addressed this issue in PublicService Coordinated Transport v. Marlo Trucking Co., 108 N.J. Super. 232, 260 A.2d 855 (1970) and decided that a self-insurer was eligible to obtain reimbursement from New Jersey's fund, notwithstanding language in the New Jersey statute requiring claimants to show that they are not seeking payment on behalf of an insurer. 260 A.2d at 858. However, the court reached a contrary conclusion eight years later in Transport of New Jerseyv. Watler, 161 N.J. Super 453, 391 A.2d 1240 (App. Div. 1978)aff'd 79 N.J. 400, 400 A.2d 61 (1979). This change was motivated by an intervening change in New Jersey law enacting mandatory automobile insurance. In Watler, the court considered whether a public bus company was eligible to recover from the fund damages caused by an uninsured motorist. In addressing this question, the court first determined that New Jersey's mandatory uninsured motorist coverage applied to self-insurers, thus requiring the bus company to assume liability for losses caused by uninsured motorists. 391 A.2d at 1242. From this conclusion, the court reasoned that a self-insurer could not recover from the fund for losses caused by uninsured motorists, not merely because it was an "insurer" under the statute, but because, being subject to the uninsured motorist insurance law, the self-insurer was deemed to have assumed responsibility for the loss for which it was seeking reimbursement. See 391 A.2d at 1245-46.
The decision in Ellis makes clear that the logic used in the New Jersey cases is inapplicable in this state. This is because Ellis established the contrary premise that, in Rhode Island, self-insurers are not deemed to assume responsibility for losses caused by uninsured motorists. Thus, RIPTA could not be denied access to the Fund under the assumption that it assumed the risk of damage from an underinsured motorist.
For the foregoing reasons, the court finds that RIPTA is not precluded from collecting from the Fund merely because it acts as a self-insurer. This decision is consistent with the reasoning ofEllis and with the stated policy of the Act, that it be liberally construed to prevent financial loss to those with valid claims against insolvent insurers.