DECISION
Before the Court for decision is the motion of defendant Microsoft Corporation seeking to dismiss plaintiffs' class action complaint for damages. The motion, made pursuant to the provisions of R.C.P. 12(b)(6), asserts that the complaint which alleges violations of the Rhode Island Antitrust Act, G.L.R.I. 1956, Title 6, Chapter 36, § 1, et seq. fails to state a claim upon which relief can be granted.
Analysis of the factual allegations in the complaint, which for the purposes of a l2(b)(6) motion are taken to be true and are to be viewed in the light most favorable to the plaintiffs, Ellis v. RhodeIsland Public Transit Authority, 586 A.2d 1055,1057 (R.I. 1991),Builders' Specialty Co. v. Goulet, 639 A.2d 59, 60 (R.I. 1994), demonstrates that the complaint sets forth inter alia that plaintiffs (together with all others who would be members of the class sought to be certified) own or lease Intel-based personal computers which use Windows 98 as the operating system. The Windows 98 operating system either had been pre-installed, as in the case of plaintiff Siena, by the original equipment manufacturer of the computer or, as in the case of plaintiff law firm, was contained on a CD ROM disk purchased by that plaintiff and installed by it on its Intel-based PC (personal computer). Neither plaintiff directly purchased from defendant Microsoft Corporation either the CD ROM or the personal computer.
Plaintiffs as a precondition to their first use of such operating system were compelled to accept and agree to an end-user license directly from defendant, the terms of which included that Windows 98 was licensed and not sold, were dictated by Microsoft Corporation.
Microsoft's share of the market for operating systems for Intel-based PC's manufactured by original equipment manufacturers is ninety five percent or more.
 DISCUSSION
Recently, the United States District Court for the District of Columbia in the case of United States v. Microsoft Corporation, see 84 Fed. Supp.2d 9 (D.D.C 1999), determined inter alia that defendant here was anti competitively undercharging for its product. That case and other rulings therein presently are pending appeal in the federal system. That case has spawned countless proceedings in federal and state jurisdictions around the country. Many of those cases, such as the one at bar, essentially are premised on the notion that Microsoft allegedly overcharges for its products. The overcharging is made possible, according to plaintiffs, as a result of Microsoft's wrongful exercise of its monopoly power.
In 1979 our General Assembly enacted the Rhode Island Antitrust Act, one of the stated purposes of which is "to compliment the laws of the United States governing monopolistic and restrictive trade practices;" § 6-36-2(a)(1). While the scope of our Act appears to be broad and sweeping, a potential limitation on the unbridled reach of our Act is found in the direction imposed by the legislature in §6-36-2(b), which reads "This chapter shall be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable, except where provisions of this chapter are expressly contrary to applicable federal provisions as construed." Thus, it is clear that rather than presenting a clean slate for those who might have reason to look to the provisions of our antitrust laws, it was the legislative intention that the interpretations and rulings of the federal judiciary should serve as a guide and, as except as our statute might be inconsistent or contrary to the federal statutes, our courts should harmonize their rulings and decisions with federal case law under the federal antitrust acts.
 STANDING
With the foregoing as background, defendant here predicates its motion to dismiss upon lack of standing on the part of plaintiffs. Defendant points to what it tells us is the seminal United States Supreme Court decision, the case of Illinois Brick Company v. TheState of Illinois, 431 U.S. 720, 97 S.Ct. 2061 (1977) as announcing the federal rule that only overcharged direct purchasers and not others in the chain of manufacture or distribution are parties "injured in his business or property" within the meaning of the Clayton Act (federal antitrust act). In Illinois Brick a number of governmental entities brought suit against a group of concrete block manufacturers (which sold to masonry contractors, who in turn sold to general contractors from whom the governmental entities purchased concrete block in the form of masonry structures) claiming that the concrete block manufacturers had engaged in an illegal price-fixing conspiracy in violation of Section 1 of the Sherman Act (also a federal antitrust statute).
The Supreme Court in deciding against the governmental entity plaintiffs stated inter alia as follows:
 "We think the long standing policy of encouraging vigorous private enforcement of the antitrust laws (citation omitted) supports our adherence to the Hanover Shoe rule, under which direct purchases are not only spared the burden of litigating the intricacies of pass-on but also are permitted to recover the full amount of the overcharge. We recognize that direct purchasers sometimes may refrain from bringing a triple-damages suit for fear of disrupting relations with their suppliers. But on balance and until there are clear directions from Congress to the contrary, we conclude that the legislative purpose in creating a group of `private attorneys general' to enforce the antitrust laws is better served by holding direct purchasers to be injured to the full extent of the overcharge paid by them than by attempting to apportion the overcharge among all that may have absorbed a part of it." 341 U.S. 745-746.
In Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 Supreme Ct. 2224 (1968), the United States Supreme Court had held that it was no defense to an action brought by a direct purchaser from an alleged violator of the antitrust laws that the direct purchaser had passed the overcharge on to its customers. Plaintiffs here seek to navigate through or around the shoals portending disaster to their cause — the Supreme Court's holding in IllinoisBrick — by urging upon this Court a number of federal decisions which they claim in proper cases have had the effect of blunting the thrust of its holding.
First, they tell us that in California v. ARC America, 490 U.S. 93
(1989), the Supreme Court held that the several states were free to interpret their own antitrust statutes to allow indirect purchasers to recover antitrust damages. Clearly, plaintiffs correctly read that case and properly articulate its holding. Also clearly, the then existing statutes of Alabama, California and Minnesota (three of the four plaintiff states) expressly allowed indirect purchasers to sue (see 490 U.S. 93, 98 f. 3). In the case at bar, this Court is required by § 6-36-2(b) to follow federal substantive interpretations of the federal antitrust statutes (see p. 2, supra). Thus, unlessIllinois Brick is not controlling or unless either (a) ". . . there are clear directions from Congress to the contrary . . . ." IllinoisBrick, 431 U.S. at 746 or (b) the holding in Illinois Brick has been eroded by subsequent United States Supreme Court opinions on this dispositive issue, defendant's motion must be granted. There is, of course, no question but that Illinois Brick has not been overruled. Further, plaintiffs have not suggested that Congress has, by legislative enactment, given contrary direction.
What plaintiffs do argue is that subsequent decisions of the federal courts, including the United States Supreme Court, has altered the landscape so as to give these plaintiffs standing as plaintiffs in this action.
Plaintiffs urge upon this Court, in an effort to preclude favorable action on defendant's motion to dismiss, an examination into "innumerable elements, including proximity and directness" and assert that "this is a more complicated fact intensive inquiry than defendant's reliance on Illinois Brick suggests." Plaintiffs claim support for their position in Blue Shield of Virginia v. McCready,457 U.S. 465 (1982) and Associated General Contractors of California,Inc. v. California State Council of Carpenters, 459 U.S. 519 (1983). However, neither of those cases deal with the primary thrust of theIllinois Brick opinion in that factually missing from each of them is any suggestion of illegal monopolistic profits passed on through a chain of distributors. Illinois Brick clearly stands for the proposition that it is the direct purchaser (the party who pays Microsoft), presumptively the original equipment manufacturer on the one hand or the manufacturer of the CD ROM if other than defendant, or the CD ROM's distributor or wholesaler who buys it from defendant if Microsoft is the manufacturer that would be the proper party plaintiff in a suit under the federal antitrust laws, and thus, the party having standing under our state statute.[1]
That Illinois Brick still controls for the reasons stated therein and that no cognizable exception thereto is implicated by the facts of this case, also is clear from Kansas and Missouri v. UtilicorpUnited, Inc., 497 U.S. 199 (1990). Justice Kennedy writing for the majority in a five to four opinion stated:
 "Like the State of Illinois in Illinois Brick the consumers in this case have the status of indirect purchasers. In the distribution chain, they are not the immediate buyers from the alleged antitrust violators. They bought their gas from the utilities, not from the suppliers said to have conspired to fix the price of gas. Unless we create an exception to the direct purchaser rule established in Hanover Shoe and Illinois Brick, any antitrust claim against the defendants is not for them, but for the utilities to assert." Utilicorp United at 209.
 END USER LICENSE AGREEMENT
Finally, plaintiffs contend that because they received as a condition to use of the Windows 98 operating system software an "end user license agreement" (EULA) which both is a license agreement and a warranty agreement, that they should be permitted a direct action under the Rhode Island Antitrust Act against defendant. Simply stated, they paid nothing directly to defendant for the EULA and as stated by the hearing judge in the Circuit Court of the State of Oregon for the County of Multnomah in the case of Daraee v.Microsoft, 0004-03311 transcript of hearing of June 13, 2000, Lines 9 through 12 on page 45 ". . . the end user licensing agreement does not take this case out of the direct purchaser requirement underIllinois Brick."
 CONCLUSION
This Court believes that our state law requirement of construing the terms of the Rhode Island Antitrust Act in harmony with comparable federal antitrust statutes inexorably leads to dismissal of this action for failure to state a claim upon which relief can be granted because of this "standing" block dictated by Illinois Brick.
Defendant's motion hereby is granted.
 ATTORNEY GENERAL
To those who would argue that the effect of this decision is to accord Rhode Island users' of Windows 98 less rights than are afforded to such users in states that permit indirect purchasers to sue as plaintiffs under their antitrust laws, this Court notes the provisions of § 6-36-12 of the Rhode Island Antitrust Act. That section authorizes the Attorney General to bring a civil action in the Superior Court in the name of the state, as parens patriae, on behalf of persons residing in this state for money damages for injuries resulting from a violation of the Act. Subsection (g) of this Section 12 provides:
 "In any action under this section the fact that a person or public body has not dealt directly with the defendant shall not bar or otherwise limit recovery. Provided, however, that the court shall exclude from the amount of monetary relief awarded in the action any amount of monetary relief which duplicates amounts which have been ordered for the same injury."
This Court also notes that Section 21 of the Rhode Island Antitrust Act requires any plaintiff (other than the Attorney General) upon commencing a civil action for violation of the Act to mail a copy of the complaint to the Attorney General. At the inception of the hearing hereon, this Court inquired as to whether such notification had taken place. Plaintiffs' counsel assured the Court that a copy of the complaint had been mailed to the Attorney General. Our statute further provides that the action should not proceed until there is filed with the court a proof of service on the Attorney General. Although at the time of hearing such proof had not been filed, plaintiffs' counsel undertook forthwith to make the required filing. Thus, in connection with the matter at bar, there can be no question but that the Attorney General has been advised of the circumstances and if he believes it to be in the best interest of residents of this state, he can take such action as he deems appropriate in his legislatively granted role of parens patriae.
Defendant's counsel shall prepare and present to the Court an appropriate order to be settled on notice to plaintiffs' counsel.
[1] See discussion as to attorney general infra at pg. 7.