DECISION
This matter is before the Court on cross motions for summary judgment filed by Defendant Rhode Island Insurers' Insolvency Fund (Fund) and Plaintiff Enterprise Rent-a-Car Co. (Enterprise). Jurisdiction is pursuant to Super. R. Civ. P. 56.
 Facts and Travel
On February 18, 2000, Conway Toliver (Mr. Toliver) was driving a rented motor vehicle when he struck Robert Kallejian (Mr. Kallejian) with the car, allegedly causing the latter to suffer physical injury. As a result of this accident, Mr. Kallejian commenced civil proceedings against both Mr. Toliver and Enterprise, the company that owned the automobile Mr. Toliver had been driving. At the time of the accident, Mr. Toliver was insured by Reliance National Insurance Company (Reliance), carrying a policy that provided him with liability limits of $25,000 per person and $50,000 per accident. The policy was active at the time of the accident, but on October 3, 2001, the Commonwealth Court of Pennsylvania declared Reliance insolvent and ordered it liquidated. Following the entry of the Order of Liquidation, Enterprise filed a claim against the Fund, asserting that it was obligated to cover Mr. Kallejian's claim.
Thereafter, on December 5, 2005, Enterprise filed a declaratory judgment action, seeking a declaration that the Fund should provide primary coverage for Mr. Kallejian's claims. The Fund denies liability and argues that, on the contrary, Enterprise is primarily responsible for covering these claims. Both the Fund and Enterprise have now filed motions for summary judgment.
Enterprise contends that Mr. Kallejian's claims against Reliance fall squarely within the category of claims covered by the Fund. It argues that under G.L. 1956 § 27-34-8(a), which governs the powers and duties of the Fund, the Fund must step into the shoes of an insolvent insurer and assume all of its liabilities. Therefore, Enterprise argues, the Fund should be primarily liable for Mr. Kallejian's claims to the exact extent that Reliance would have been had it remained solvent.
The Fund disagrees with this analysis, arguing that a) under Section 27-34-5(8)(ii)(C), the Fund is not responsible for paying a claim for the benefit of a self-insurer such as Enterprise; and b) Enterprise's self-insurance is "valid and collectable," and the version of Section 31-34-4(b) (governing liability of the owner of a rental vehicle for the negligence of the operator) in effect at the time of the accident states that the "valid and collectable" insurance of either the operator or owner is to be primary.
 Standard of Review
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burrillville Racing Association,603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State,427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)). During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Id. (citingLennon v. MacGregor, 423 A.2d 820 (R.I. 1980)).
"The party moving for summary judgment has the initial burden of showing that there is no genuine issue of material fact."Santiago v. First Student, Inc., 839 A.2d 550, 552 (R.I. 2004) (citing Heflin v. Koszela, 774 A.2d 25, 29 (R.I. 2001)). The moving party can meet this burden by "`submitting evidentiary materials, such as interrogatory answers, deposition testimony, admissions, or other specific documents, and/or pointing to the absence of such items in the evidence adduced by the parties.'"Id. (quoting Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999)). "[T]he opposing parties will not be allowed to rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact."Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998) (citing St. Paul Fire Marine Insurance Co. v. Russo Brothers,Inc., 641 A.2d 1297, 1299 (R.I. 1994); Super. R. Civ. P. 56(e)).
 Analysis
The Rhode Island Insurer's Indemnity Fund
The Fund is a non-profit unincorporated legal entity created by The Rhode Island Insurers' Insolvency Fund Act (RIIIFA). G.L. 1956 §§ 27-34-1 to 27-34-19. The Legislature created the Fund in order "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, and to create an entity to assess the cost of the protection and distribute it equitably among member insurers." Sec. 27-34-2. Thus, the Fund acts as an insurance safety net for those bona fide claimants whose insurers have become insolvent.
Covered Claims
The Fund argues that it is only responsible for "covered claims." Section 27-34-5(8) defines the term "covered claims" for purposes of RIIIFA:
 "(8) `Covered claim' means an unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and subject to the applicable limits of an insurance policy to which this chapter applies issued by an insurer if the insurer becomes an insolvent insurer and:
 . . . .
 (ii) The property from which the claim arises is permanently located in this state. "Covered claim" shall not include any amount:
 . . . .
 . . . .
 (C) Due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise; provided, that a claim for any amount, asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool, or underwriting association, would be a "covered claim", may be filed directly with the receiver of the insolvent insurer, but in no event may any the claim [sic] be asserted against the insured of the insurer[.]" (Emphasis added.)
The Fund argues that because Enterprise is a self-insurer, it should be considered an "insurer" under this section and therefore precluded from seeking recovery from the Fund. Enterprise does not dispute the claim that it is a self-insurer, but argues that a self-insurer is not an "insurer" for purposes of this statute.
The question is one of statutory construction. It has long been held that "when the language of the statute is unambiguous and expresses a clear and sensible meaning, no room for statutory construction or extension exists, and we are required to give the words of the statute their plain and obvious meaning." Ellis v.Rhode Island Pub. Transit Auth., 586 A.2d 1055, 1057 (R.I. 1991) (citing O'Neil v. Code Comm'n for Occupational Safety andHealth, 534 A.2d 606, 608 (R.I. 1987)).
Section 27-34-5(8)(ii)(C) does not include "self-insurer" in its list of entities that are ineligible to present claims to the Fund. The Rhode Island Supreme Court has found there are fundamental differences between insurers and self-insurers:
 "A policy of insurance is contractual in nature. Two parties, the insurer and the insured, enter into an agreement whereby the insurer agrees, in exchange for the insured's payment of premiums, to make payments to or on behalf of the insured upon the happening of an event. In the case of a self-insurer, no contract of insurance exists. Under the self-insurer statute, the Registry of Motor Vehicles `issues a certificate of self-insurance. . . .' No consideration is tendered to the registry by the self-insurer, nor does the registry make payment to or on behalf of the self-insurer when the latter incurs liability. The certificate merely certifies that the person or business to whom it is issued is financially responsible and can pay judgments rendered against it." Ellis, 586 A.2d at 1060.
Thus, "insurers" and "self-insurers" are not interchangeable phrases, and the Legislature's failure to include the latter in Section 27-34-5(8)(ii)(C) is telling. In this section, the Legislature listed several entities to be covered — reinsurers, insurers, insurance pools, underwriting associations — and the Rhode Island Supreme Court has held that "`an express enumeration of items in a statute indicates a legislative intent to exclude all items not listed.'" Greenhalgh v. Cranston, 603 A.2d 1090,1092 (R.I. 1992) (quoting Murphy v. Murphy, 471 A.2d 619, 622
(R.I. 1984)). In Section 27-34-5(8)(ii)(C), there is no evidence that the Legislature intended to include self-insurers among those ineligible to file claims against the Fund, and this Court will not read them into the statute.
The Fund's Duties Under Section 31-34-4
Enterprise argues under Section 27-34-8(a)(1), which sets forth the duties of the Fund, the Fund is obligated to pay "covered claims existing prior to the determination of insolvency of a member insurer or arising within sixty (60) days after [such] determination[.]" Enterprise argues that Mr. Kallejian's claims fall squarely within this category. The parties do not dispute that Reliance was a member insurer and was declared insolvent by the Pennsylvania courts after Mr. Kallejian filed his claim. In addition, the parties agree that Mr. Kallejian's claims remain unpaid. Thus, Enterprise argues that Mr. Kallejian's claim is a "covered" claim within the meaning of Section 27-34-5(8), as it is an "unpaid claim" against an insolvent "member insurer."
Enterprise further argues that the Fund is not only liable for Mr. Kallejian's claims, but that it is also primarily liable for them. It argues that under Section 31-34-4, which governs the liability of an owner of a rental vehicle for the negligence of the driver, and under the rental contract between Enterprise and Mr. Tolliver, the operator's "valid and collectable" liability insurance is primary over the owner's insurance. The version of Section 31-34-4 in place at the time of the accident reads in relevant part:
 "(a) Any owner of a for hire motor vehicle or truck who has given proof of financial responsibility under this chapter . . . shall be jointly and severally liable with any person operating the vehicle for any damages caused by the negligence of any person operating the vehicle by or with the permission of the owner. . . .
 (b) Notwithstanding the provisions of subsection (a) of this section, or any provisions contained under title 31 to the contrary, the valid and collectable liability insurance or self-insurance providing coverage or liability protection for third party liability claims arising out of the operation of the rental vehicle shall be primary for the lessor or any person operating the motor vehicle, with the express permission of the lessor unless otherwise stated in at lease ten (10) point type on the face of the rental agreement."
 (c) Lessor includes any entity in the business of renting motor vehicles pursuant to a written agreement."
In addition, the rental contract states, "The liability insurance of any driver or leasee of the vehicle rented under this contract is primary as required by R.I.G.L. 31-34-4."
To support its argument, Enterprise cites Medical MalpracticeJoint Underwriting Ass'n v. Rhode Island Insurers' InsolvencyFund, 703 A. 2d 1097 (R.I. 1997), stating that under this case, the Fund must assume all of the insolvent insurer's responsibilities. Had Reliance remained solvent, Enterprise claims, it would have been liable under Section 31-34-4(b) and the rental agreement because it had provided Mr. Toliver with "valid and collectable" insurance at the time of the accident. Enterprise argues that the Fund, stepping into the shoes of Reliance and assuming all of its obligations, is responsible for covering the terms of that once "valid and collectable" policy.
The Fund disagrees. It argues that Mr. Toliver's policy immediately became invalid and uncollectable when Reliance was declared insolvent. Therefore, the Fund argues, Enterprise's self-insurance remains the only "valid and collectable" insurance involved in this case, making Enterprise primarily liable under Section 31-34-4(b).
In order to determine if the Fund should be required to cover Mr. Kallejian's claims, the Court must first determine what is meant by the term "valid and collectable" as it is used in Section 31-34-4(b). As stated above, unambiguous words in a statute are to be given their plain and ordinary meaning.Ellis, 586 A.2d at 1057. In the dictionary, "valid" is defined as "having legal force; effective or binding," and "collectable" is defined as that which "can be collected." American HeritageDictionary (4th ed. 2000) at 1899, 362. Thus, giving these unambiguous words their plain and ordinary meanings, it is clear that a policy is only "valid and collectable" under Section31-34-4 if it is legally enforceable and has funds available for collection. In Section 31-34-4(b), the Legislature has unambiguously stated that insurance is primary only when it is "valid and collectable"; there is no reason to depart from the plain and ordinary meaning of these words. Once Reliance was declared insolvent, no one, including Mr. Kallejian, could collect under Mr. Toliver's policy with Reliance, making that policy no longer "valid and collectable."
Other jurisdictions have interpreted the phrase in a way that comports with the above analysis. In Hellman v. Great Ins. Co.,66 Cal. App. 3d 298, 304 (Cal.Ct.App. 1977), the Court of Appeals of California noted that the term "`valid and collectable insurance' has widespread use in the insurance industry of the United States and has a well established meaning." In that case, the Court found that this "well-established meaning" is generally "insurance which is legally valid and is underwritten by a solvent carrier." Id.; see also Friedfeld v. Royal Indem.Co., 167 So. 2d 586, 587 (Fla.Dist.Ct.App. 1964) ("[V]alid and collectable" insurance is directed to a policy which is legal and valid, as distinguished from one which is invalid such as for fraud, or uncollectible such as for insolvency.").
While the term "valid and collectable" is itself unambiguous, the application of the phrase under Section 31-34-4(b) leaves room for interpretation. Enterprise argues that once Reliance was declared insolvent, the Fund stepped into the shoes of Reliance and the insolvent policy immediately became "valid and collectable" again. Alternatively, the Fund claims that it does not need to "step into the shoes" of Reliance for purposes of Mr. Kallejian's claim because he can already recover under Enterprise's "valid and collectable" self-insurance. It argues that, for purposes of primacy under Section 31-34-4(b), the term "valid and collectable" can refer only to the operator's and the owner's original policy or self-insurance.
The rules of statutory construction provide the Court with guidance on this issue. A basic tenant of statutory construction is that the Court will not "construe a statute to reach an absurd result." State v. Menard, 888 A.2d 57, 60-61 (R.I. 2005) (citing State v. Santos, 870 A.2d 1029, 1032 n. 5 (R.I. 2005)). In addition, "statutes affecting related subjects should be interpreted to provide consistency and to effectuate the purposes intended by the Legislature." Dahl v. Begin, 660 A.2d 730, 734
(R.I. 1995) (citing In re Falstaff Brewing Corp.,637 A.2d 1047, 1051 (R.I. 1994)). Therefore, the Court must examine Section 31-34-4 in conjunction with the RIIIFA and the purposes and policies behind the establishment of the Fund.
Section 27-34-2 states that the Fund's purpose is to "avoid financial loss to claimants or policyholders because of the insolvency of an insurer." In other words, the Fund was created to ensure that injured claimants are not barred from all recovery simply because they had chosen to insure themselves with a carrier that later becomes insolvent. Section 31-34-4(a) establishes that the owner and operator of a rented motor vehicle will be held jointly and severally liable for the operator's negligence. Allowing the validly self-insured Enterprise to escape liability in this case would contradict the legislative intent of holding both the owner and the operator jointly and severally liable. It would be contrary to the purpose of the RIIIFA to hold the Fund responsible for paying for claims under the operator's insolvent policy when the owner's insurance policy remains "valid and collectable."
In addition, Enterprise's reliance on Medical MalpracticeJoint Underwriting Ass'n is misplaced, as that case is not directly on point and is distinguishable from the instant case. In Medical Malpractice Joint Underwriting Ass'n, the court states that the Fund "is obligated to assume all the obligations that would have been incumbent upon the insolvent insurer had it not become unable to discharge these responsibilities." MedicalMalpractice Joint Underwriting Ass'n, 703 A.2d at 1102 (citing Section 27-34-8(a)(1)(2)). However, in that case, one defendant was insured by the Fund as a result of the insolvency of his original insurer. The plaintiff in that case sought a declaratory judgment to determine the Fund's responsibility to participate with the other defendants' insurers in settlement negotiations.Id. at 1098. The insurance companies were attempting to resolve litigation that involved "a number of defendants who could potentially be held partially liable for the injuries upon which a plaintiff's complaint might be based." Id. (Emphasis added.) The Fund had refused to participate in these settlement negotiations, claiming that, under Section 27-34-12, it was obliged to withhold any payment pending exhaustion of the insurance limits of all other tortfeasors. Id. at 1100. However, the Rhode Island Supreme Court ruled that the exhaustion requirement of Section 27-34-12 applied only to a claimant's own policies, not the policies of co-defendants or joint tortfeasors.Id. at 1102. The Court interpreted Section 27-34-12 in light of the object and policies of the RIIIFA; particularly, the Court noted that a different interpretation of this section could lead to a result where the Fund "would stand aloof from any settlement discussions or participation until a medical-malpractice plaintiff brought suit against and exhausted the coverage of a codefendant even if that codefendant was responsible for only a minor percentage of the liability against that plaintiff." Id.
at 1102.
The Rhode Island Supreme Court's interpretation of Section27-34-12 in Medical Malpractice Joint Underwriting Ass'n can be harmonized with this Court's interpretation of Section 31-34-4.Medical Malpractice Joint Underwriting Ass'n involved a medical malpractice case, not one involving rented motor vehicles. The Legislature enacted Section 31-34-4 specifically to establish the liability of both the owner and the operator of a rented motor vehicle when the operator has been negligent. In writing Section31-34-4(a), the Legislature mandated that the owner and the operator of the vehicle be held jointly and severally liable in these cases. In enacting Section 31-34-4(b), the Legislature also ensured that "the valid and collectable liability insurance or self-insurance providing coverage or liability protection for third party liability claims arising out of the operation of the rental vehicle shall be primary for the lessor or any other person operating the motor vehicle."
This apportionment of liability differs from the partial liability of the co-defendants in Medical Malpractice JointUnderwriting Ass'n. Section 31-34-4 governs cases involving the rental of motor vehicles, and is inapplicable to medical malpractice cases. Therefore, as Medical Malpractice JointUnderwriting Ass'n does not involve an analysis of Section31-34-4, it does not control the instant case. Together, Section31-34-4(a) and (b) indicate a legislative intent to hold the insurer of either the operator or the owner of a rental car fully liable in cases where the other party's insurer is insolvent.
 Conclusion
The Court, having taken into account the language and purpose of both the RIIIFA and Section 31-34-4, finds that Section27-34-5(8)(ii)(C) does not preclude a self-insurer from presenting claims to the Fund. The Court also finds that pursuant to Section 31-34-4(a), Enterprise is jointly and severally liable for the injuries alleged by Mr. Kallejian, and that the existence of the Fund does not transform a policy underwritten by an insolvent insurer into "valid and collectable" insurance for purposes of Section 31-34-4(b). Therefore, Enterprise, not the Fund, is primarily liable for Mr. Kallejian's claims.
On the basis of the foregoing, the Court denies Enterprise's motion for summary judgment, and grants the motion for summary judgment on this claim in favor of the Fund.
Counsel shall submit an order for entry consistent with this decision.