**AMERICAN UNIVERSAL INSURANCE CO.**

v.

**Beverly A. RUSSELL.**

**No. 83–50–Appeal.**

Supreme Court of Rhode Island.

April 5, 1985.

Ruth DiMeglio, C.R. Bengston, Carroll, Kelly & Murphy, Providence, for plaintiff.

Ronald J. Resmini, Providence, for defendant.

OPINION

MURRAY, Justice.

This is a declaratory judgment action commenced by the American Universal Insurance Company (American Universal) pursuant to G.L. 1956 (1969 Reenactment) chapter 30 of title 9. In its complaint, American Universal sought a determination of its liability to the defendant, Beverly A. Russell, under a policy issued by it to the East Providence Ambulance Company (the

Ambulance Company). The central issues involved in this appeal are (1) whether the policy in question should be deemed to have included coverage for loss caused by an uninsured motorist, and (2) if such coverage existed, whether the defendant may "stack" that coverage by the number of vehicles covered in the policy.

The facts, which are undisputed, are as follows. On July 13, 1978, Beverly A. Russell (Russell) was a passenger in a motor vehicle owned by East Providence Ambulance Company and insured by American Universal as one of thirty-three vehicles insured under a "fleet policy." The Ambulance Company vehicle was being operated by Bruce Nickerson, an employee of the Ambulance Company, when it was involved in a collision with an uninsured motor vehicle owned and operated by Marilyn S. Pope. As a result of the crash, defendant Russell sustained severe personal injuries. In order to recover for her injuries, Russell commenced an action in Kent County Superior Court against American Universal, Nickerson, the Ambulance Company, and Pope. American Universal answered Russell's complaint by admitting that the Ambulance Company vehicle was covered under an existing insurance policy and that Russell, as a passenger in that vehicle, would be deemed an insured under that policy. American Universal went on to claim, however, that the policy did not provide coverage for loss caused by an uninsured motorist and that Russell therefore had no cause of action against it. Russell responded by filing a demand for arbitration with the American Arbitration Association, asking for a determination that uninsured-motorist benefits were available to her under the Ambulance Company policy. American Universal then filed the instant action.

As to the uninsured-motorist-coverage issue, the Superior Court held that although it was not provided for in the Ambulance Company policy, such coverage had arisen by operation of law. The Superior Court based its decision on a reading of G.L.1956 (1979 Reenactment) § 27–7–2.1, which provides, in pertinent part, that

"[n]o policy * * * shall be delivered or issued * * * with respect to any motor vehicle * * * unless coverage is provided * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles * * * provided that the named insured shall have the right to reject such coverage, or that portion thereof that applies to property damage."

The lower court held that American Universal's failure to offer the Ambulance Company uninsured-motorist coverage when the policy was renewed in May of 1978 constituted noncompliance with the above section and that uninsured-motorist coverage would therefore be written into the policy by operation of law. We agree.

The undisputed facts show that the Ambulance Company has been insured by American Universal since the 1960's. Sometime in the mid-1960's, presumably when the first policy was written, plaintiff's agent, Anthony Gomes, offered the company uninsured-motorist coverage. The then president of the company, Anthony Maciel, declined the offer for financial reasons.[1] Subsequent to this exchange, the subject of uninsured-motorist coverage was never discussed by either American Universal or the Ambulance Company, although the insurance policy was renewed

1. There is some dispute as to whether Maciel's refusal of uninsured-motorist coverage was oral or in writing. Maciel has stated that he signed a written waiver, but that writing has never been produced. The parties believed this controversy to be significant because regulation X promulgated by the Director of Business Regulation provides that rejection of uninsured-motorist coverage, in order to be effective, must be in writing and separate and apart from the contract of insurance. The plaintiff has challenged the validity of this regulation. Because we hold that American Universal was required by law to offer uninsured-motorist coverage upon each policy renewal, it is unnecessary to consider this challenge, since coverage was not refused either orally or in writing in May of 1978.

annually. The plaintiff never again offered the coverage and the Ambulance Company never refused it (or had an opportunity to do so).

■ We agree with the trial justice and find American Universal's actions to be insufficient to deny the existence of uninsured-motorist coverage. Section 27–7–2.1 is clear and unambiguous. It states that "[n]o policy * * * shall be delivered or issued" unless uninsured-motorist coverage is included, "provided that the named insured shall have the right to reject such coverage * * *." For an insured to reject uninsured-motorist coverage, it must first have been offered. Such coverage was not offered when the policy was renewed in May of 1978, nor was it offered on any date save one occasion in the mid 1960's. We reject plaintiff's argument that this one rejection, at least ten years old, was sufficient to satisfy the statute because the subsequent policies were renewals, not "new" policies. The legislative intent behind § 27–7–2.1 would be defeated by such an artificial distinction. American Universal's mid-1960 offer was wholly insufficient to satisfy the public policy expressed in § 27–7–2.1. As stated by the trial judge:

"The legislature in enacting § 27–7–2.1 obviously contemplated that an offer of uninsured motorist coverage be made by the insurance company or its agent with the issuance of each automobile policy, whether a renewal or original policy. Thus there has to be a rejection of that coverage for each policy issued in order to prevent that coverage from coming into effect by operation of law. Any other interpretation would make the statute generally ineffective and easily circumvented * * *. One rejection cannot serve for infinity."

We hold that plaintiff's failure to offer the Ambulance Company uninsured-motorist coverage for the May 1978 renewal of its policy mandates that such coverage be written into the policy by law. Since defendant is claiming under the policy executed in May of 1978, and since American

Universal has admitted that defendant is an insured thereunder, defendant is entitled to uninsured-motorist coverage pursuant to that policy. We further find that the amount of such coverage shall be the minimum amount required under § 27–7–2.1 (which refers to § 31–31–7 for a dollar amount). The defendant's claim that coverage should be provided to the limits of liability contained in the policy does not persuade us. The General Assembly has mandated that a minimum amount of uninsured-motorist coverage be provided in all policies unless an insured rejects that coverage. Here, there was no rejection and thus the minimum amount of coverage is mandated by law. At the operative time, G.L.1956 (1968 Reenactment) § 31–31–7, as amended by P.L.1976, ch. 314, § 2, established a minimum liability of $25,000, and we hold that the vehicle in question was covered by uninsured-motorist protection in the amount of $25,000.

The final issue that concerns us was contemplated by this court in *Taft v. Cerwonka*, R.I., 433 A.2d 215 (1981). In the *Taft* case, the parents of a minor child brought suit against their insurance carrier to recover for the wrongful death of their child. The action was based on the uninsured-motorist provisions of a policy that covered the family's two automobiles. The child had been killed when an uninsured automobile in which she was a passenger left the roadway and crashed. At issue in *Taft* was whether the plaintiffs would be permitted to "stack" the uninsured-motorist coverages provided for each of the two family automobiles insured by the carrier. If so, they would be entitled to recover a maximum of $20,000 from the insurance carrier because each of the two automobiles was covered by $10,000 of uninsured-motorist protection.

■ The *Taft* court identified three rationales that have been utilized by courts to permit intrapolicy "stacking." 433 A.2d at 217. They were:

1. Where the applicable provisions of an insurance contract are ambiguous, then

such ambiguities are to be resolved against the insurer. *See Jeffries v. Stewart*, 159 Ind.App. 701, 309 N.E.2d 448 (1974);

2. Where the jurisdiction has an uninsured-motorist statute that failed to prohibit "stacking," some courts have construed this to be an implicit approval of "stacking." *See Holloway v. Nationwide Mutual Insurance Co.*, 376 So.2d 690 (Ala.1979); *Tucker v. Government Employees Insurance Co.*, 288 So.2d 238 (Fla.1974); and

3. The so-called "double premiums theory," where courts have held that the payment of separate premiums for uninsured-motorist coverage for each vehicle entitles the insured to "stack" the limits of liability on those vehicles. *See Kemp v. Allstate Insurance Co.*, 183 Mont. 526, 601 P.2d 20 (1979); *Allstate Insurance Co. v. Maglish*, 94 Nev. 699, 586 P.2d 313 (1978).

The decision in *Taft* to allow intrapolicy "stacking" did not rest exclusively on any of the above three rationales, but rather settled on a holding that gave primary weight to the reasonable expectations of the insured. In *Taft* the policyholders were paying two separate premiums on a policy that was silent as to whether "stacking" of coverages was permissible. In that circumstance, the plaintiffs were entitled to recover the aggregate sums of the uninsured-motorist coverage because it was reasonable for them to expect as much. The *Taft* court was careful not to paint with too broad a brush, as evidenced by this statement:

"We are careful to limit our holding on this issue to cases factually similar to the one at bar, for we foresee and rue the day when our reasoning may be twisted to achieve an absurd result. For example, what is the result to be if a plaintiff was injured while riding in an automobile which was insured as only one of a fleet of cars? We defer decision on this and related issues until a case with the appropriate factual setting presents itself for review." 433 A.2d at 219.

The vehicle in which defendant was riding when struck by Pope, the uninsured motorist, was one of thirty-three vehicles insured for the Ambulance Company by American Universal. The situation contemplated by *Taft* has arrived, and defendant urges this court to allow the "stacking" of uninsured-motorist coverage, held earlier in this opinion to have arisen by operation of law, thirty-three times. On the same grounds this court found dispositive in *Taft*, namely, the reasonable expectations of the insured, we refuse to condone intrapolicy "stacking" of uninsured-motorist coverage in this situation.

The circumstances of this case and the *Taft* case lie at opposite ends of the spectrum. American Universal's present liability arises not through contractual obligation, but by operation of law. The insurance carrier's liability in *Taft* was purely contractual. In *Taft*, the payment of double premiums together with the ambiguity of the policy combined to create a reasonable expectation that uninsured-motorist coverage for each vehicle would be provided by the insurer. Here, there were *no* payments of premiums for uninsured-motorist protection. Absent American Universal's failure to comply with a statutory requirement, it would have been unreasonable to expect *any* uninsured-motorist coverage. To argue that it was reasonable to expect coverage equal to thirty-three times the statutory minimum defies common sense. Further, the insurance policy in question is free of ambiguity. Uninsured-motorist coverage was simply not part of American Universal's contractual obligation. Any coverage the defendant is entitled to has arisen by operation of law, not by agreement between the insurer and insured. Under these circumstances, the insured will not be permitted to engage in intrapolicy "stacking."

American Universal is liable to Beverly Russell for loss caused by the uninsured motorist in an amount not to exceed $25,000. The defendant's appeal is denied and

dismissed. The judgment appealed from is affirmed.