DECISION Introduction
This matter comes before the Court as a result of cross-motions for summary judgment filed by the plaintiff, Billie J. Yelland (plaintiff or insured), and the defendant, Illinois National Insurance Company and/or AIG Specialty (defendant or insurer). The parties in this case seek declaratory relief regarding the interpretation of G.L. 1956 § 27-7-2.1
(Uninsured motorist coverage). Specifically, the parties ask this Court to determine whether an insurer, who receives a written waiver or rejection of uninsured motorist coverage pursuant to § 27-7-2.1(a), must obtain additional written rejections of uninsured motorist coverage for each subsequent renewal or amendment of the insured's policy pursuant to § 27-7-2.1(d), or face reformation of the policy to include uninsured motorist coverage for bodily injuries.
 I. Facts
On or about March 3, 1997, the plaintiff procured insurance from the defendant through Bud Balfour Insurance, Inc., for her 1986 Dodge Colt. The plaintiff was issued policy number AIG 8629672, and the policy covered the period from March 3, 1997, up to and including March 3, 1998. The policy provided bodily injury and property damage liability coverage in the amounts of $25,000 per person and $50,000 per accident, the minimum Rhode Island statutory limits.[1] No other coverage was afforded under the automobile insurance policy, as the plaintiff had executed "Rejection Notice and Warning" forms regarding uninsured/underinsured (UM) coverage, medical payments and uninsured/underinsured property damage coverage (UMPD), on March 3, 1997.
Subsequently, on June 2, 1997, the policy in question was amended. The policy was amended by dropping the 1986 Dodge Colt from coverage and by adding a new vehicle, a 1997 Hyundai Accent. Further amendment to said policy included adding collision and comprehensive coverage, each with $500 deductibles. The transaction was conducted via telephone. Thereafter, the plaintiff received her amended policy in the mail, entitled "Personal Auto Policy New Declaration," effective from the date that the original policy was executed, March 3, 1997. Later, the plaintiff's automobile insurance policy was renewed, the effective dates running from March 3, 1998, to March 3, 1999. Again, documentation was sent to the plaintiff, by mail, reflecting the renewal and entitled "Personal Auto Policy Renewal Notice."
The plaintiff represents that she had made an oral request for UM coverage, by telephone, with an agent. She contends that she asked for the addition of UM coverage when the policy was changed. She further alleges that neither Bud Balfour Insurance, Inc., the defendant, nor the agent, requested that she execute an additional rejection of coverage form regarding UM/UIM coverage for the renewed policy effective from March 3, 1998, through March 3, 1999.
All policy renewals and notices of changes contained the following language: "Rhode Island insurance laws require us to notify you of the availability of uninsured/underinsured motorist coverage in the event of any policy endorsement, reinstatement, renewal, or replacement. Please contact your agent for specific coverage availability and options."[2]
The above-quoted language is clearly offset from the rest of the language contained in the documents. It is undisputed that no other rejection of coverage form for UM/UIM coverage was executed by the plaintiff for the renewed policy effective from March 3, 1998, to March 3, 1999.
The plaintiff was in an automobile accident on or about July 14, 1998. At that time, the 1997 Hyundai Accent was struck by another motor vehicle. The vehicle was driven by Glenn Bruhn and owned by Barbara Bruhn.[3] The plaintiff filed a claim against the driver and the owner of the vehicle involved in the accident and collected the Bruhns' policy limits of $25,000.
The plaintiff then filed a claim against the defendant for underinsured motorist benefits under her insurance policy as a result of the July 14, 1998, accident. At all times, the plaintiff's policy included the statutory minimum liability limits of $25,000 per person. The defendant denied the claim for UM benefits, asserting that the policy, as written, provided for no such UM coverage. The plaintiff then commenced with the instant litigation.
 II. Standard of Review
The parties have moved this Court to grant summary judgment. The Rhode Island Supreme Court has oft repeated the standard a motion justice must use in ruling on such a motion. "Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burrillville Racing Association,603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State, 427 A.2d 338
(R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)); Super. Ct. R.Civ.P. 56(c). During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano, 603 A.2d at 320 (citing Lennon v.MacGregor, 423 A.2d 820 (R.I. 1980)). The Court's purpose during the summary judgment procedure is issue finding, not issue determination.Industrial National Bank v. Peloso, 397 A.2d 1312, 1313 (R.I. 1979) (citing O'Connor v. McKanna, 359 A.2d 350 (R.I. 1976); Slefkin v.Tarkomian, 238 A.2d 742 (R.I. 1968)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact. Id. (citing RhodeIsland Hospital Trust National Bank v. Boiteau, 376 A.2d 323 (R.I. 1977)). "When an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in the light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." Id. (Citations omitted). Finally, "the procedure for obtaining a declaratory judgment authorized by statute shall be in accordance with [the Superior Court Rules of Civil Procedure] . . . ." Super. Ct. R.Civ.P. 57.
 III. Analysis
The parties seek declaratory relief in accordance with G.L. 1956 §9-30-1 et seq., entitled "Uniform Declaratory Judgments Act." Pursuant to that chapter of the General Laws, this Court "shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. . . . The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." G.L. 1956 § 9-30-1. It is within this Court's discretion to refuse to render or enter a declaratory judgment if such a judgment would not terminate the uncertainty that gave rise to the proceeding. G.L. 1956 § 9-30-6.
The plaintiff alleges that the provisions of G.L. 1956 § 27-7-2.1
requires the plaintiff's insurance policy to be reformed to include UM coverage by operation of law. The defendant argues that it complied with the statutory law, and any other relevant law, relative to the issuance of the policy and, in so complying, there is no basis to reform the policy; therefore, the policy as written does not provide UM coverage. As the rendering of a declaratory judgment in this case will not terminate the uncertainty between the parties, this Court deems it inappropriate to exercise its discretion and render a decision at this time.
While the parties have submitted an agreed-upon statement of facts, a factual dispute exists in this case such that the declarations sought for by the parties would not terminate the uncertainty that gave rise to the proceeding. The legal issue whether, pursuant to § 27-7-2.1(a) and (d), an insurer must obtain additional written rejections of uninsured motorist coverage for each subsequent renewal or amendment of the insured's policy, or face reformation of the policy to include uninsured motorist coverage for bodily injuries, is not dispositive based on the facts of the case at bar. Indeed, facts in dispute in this case, facts that ultimately render a declaration of the rights of the parties in these cross-motions for summary judgment inappropriate, is whether the defendant did, in fact, give sufficient notice regarding the availability of uninsured motorist coverage, and whether the plaintiff made a request for such coverage.
In this case, determining the rights and remedies of the parties requires an examination of Rhode Island's uninsured motorist statute, G.L. 1956 § 27-7-2.1. When a court construes a statute, the primary function "is to establish and effectuate the intent of the Legislature."Tinney v. Tinney, 799 A.2d 235, 236-37 (R.I. 2002) (quoting Cardarelliv. DET Board of Review, 674 A.2d 398, 400 (R.I. 1996)). The "language, nature and object of the statute" must be carefully examined in order to determine that intent. Id. at 237 (quoting Brouillette v. DET Board ofReview, 677 A.2d 1344, 1346 (R.I. 1996)). The Rhode Island Supreme Court has repeatedly stated that "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Id.
(quoting Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996)).
 Section 27-7-2.1(a) states, in pertinent part:
 "No policy . . . shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided in or supplemental to the policy, for bodily injury or death in limits set forth in each policy, but in no instance less than the limits set forth in § 31-31-7 under provisions approved by the insurance commissioner, for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . . The insurer shall provide uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits. The named insured shall have the option of selecting a limit in writing less than the bodily injury liability coverage, but in no event less than the limits set forth in § 31-31-7, unless the named insured is purchasing only the minimum coverage required by compulsory insurance provisions of the general laws, in which case the limit can be reduced to zero, but only after signing an advisory notice approved by the director of business regulation concerning the hazard of uninsured and underinsured motorists."
Additionally, and pertinently, subsection (d) of the statute reads:
 "After the selection of limits by the named insured or the exercise of the right to reject that portion of the coverage which applies to property damage, the insurer or any affiliated insurer shall be required to notify the policyholder, in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy, as to the availability of that coverage or optional limits. The insured may, subject to the limitations expressed in this chapter, make a written request for higher limits, newly added coverage, or coverage more extensive than that provided on a prior policy." (Emphasis added.)
This issue was previously addressed by the Rhode Island Supreme Court in Am. Universal Ins. Co. v. Russell, 490 A.2d 60 (R.I. 1985), a case relied upon for support by the plaintiff. In that case, UM coverage was read into the policy by operation of law. See id. at 62. It appears that there are two points that clearly distinguish that case from this case. The first point is, simply, the statute is different now than it was whenRussell was decided. The language in § 27-7-2.1(d) was not added to the statutory scheme and related regulations until after that decision.Compare P.L. 1986, ch. 334, § 1 (without language of subsection (d)), with P.L. 1987, ch. 380 (adding language in subsection (d) to statute). Any requirement regarding repeated rejections of such coverage must be read in light of the statutory scheme in place at the time; that scheme did not contain the language pertinent to the situation in this case. Secondly, from a factual standpoint, there was no dispute that the defendant insurance company in Russell did not notify or offer the plaintiff UM coverage at the time for renewal of the policy, whereas, in this case, whether or not notification of the availability of UM coverage was made is in dispute.
Recently, the Rhode Island Supreme Court addressed the interplay between subsection (a) and subsection (d) of the statute. In Ferreira v.Integon Nat'l Ins. Co., 809 A.2d 1098 (R.I. 2002), involving an issue similar to that in the instant litigation, the Court reviewed a summary judgment ruling in favor of the defendant insurance company. The question before the Court was: "When a party is added as a named insured to a policy that does not provide uninsured motorist (UM) coverage, is the insurer required to obtain a written rejection of UM coverage from the new insured, in accordance with G.L. 1956 § 27-7-2.1(a), or is the insurer required only to notify the insured of the existence of UM coverage, in accordance with subsection (d) of § 27-7-2.1?" Id. at 1099.
In Ferreira, the plaintiff was insured under a policy that originally was issued to a woman who eventually became his wife. When the policy was initially issued to the wife, UM coverage was made available to her. She declined the offer and executed the requisite notice and warning form, which informed her of the dangers of uninsured motorists, "in accordance with the manner of rejection required by law." Id. The plaintiff in that case was added as a named insured, and both he and his wife were sent notices advising them of the availability of coverage. Such notice was also provided when the policy was annually renewed. Neither the plaintiff nor his wife ever sought such coverage. Subsequently, the plaintiff was injured in an automobile accident involving an uninsured motorist. Id.
The plaintiff filed suit, seeking a declaration that the policy should be reformed to included UM coverage on the grounds that the defendant never received a written rejection of coverage. Id. The defendant argued that only when a policy is initially offered must an insurer provide UM coverage unless in receipt of a signed rejection and notice form; in contrast, when a person is added onto a preexisting policy, the "insurer's sole obligation is to issue written notice of the availability and desirability of UM coverage, in accordance with § 27-7-2.1(d)."Id. The motion justice granted the insurance company's motion for summary judgment.
The Rhode Island Supreme Court, in affirming the decision, noted that subsection (d) of the statute only requires an insurer to notify an insured of the availability of uninsured/underinsured motorist coverage and that "[t]here is no requirement for a written rejection." Id. at 1101. In a transaction covered by § 27-7-2.1(d), a defendant does not automatically have to provide UM coverage. Id. The Court held that the motion justice was correct in determining that subsection (a) of the statute requires a signed rejection of such coverage only when the policy is initially issued. Id. Notably, the Court reasoned that "the Legislature could have required that subsection (a) apply also when the events in § 27-7-2.1(d) occurred, such as an amendment, modification, or renewal." Id. The transaction in the case was one contemplated by § 27-7-2.1(d) and, therefore, not governed by §27-7-2.1(a). Id. In closing, the Court noted, "[a]ny change in these clear statutory provisions that would impose [an] arguably onerous burden on insurers should be made by duly enacted legislation." Id.
While the law seems clear after Ferreira, the troubling aspect of this case is the method of "notification" to the insured by the insurer as to the availability of uninsured motorist coverage. That is, the method of notification is printed on the relevant insurance form, be it a renewal, an amendment, or other form. They all state that "Rhode Island insurance laws require us to notify you of the availability of uninsured/underinsured motorist coverage . . . . Please contact your agent for specific coverage availability and options." It thus appears perfectly reasonable for an insured to desire UM coverage, to contact the insurer "for specific coverage availability and options," and to request such coverage via telephone without ever having any actual or constructive knowledge with respect to the statutorily prescribed requirement of making such a request in writing. The insured was relying on the knowledge and assistance of her insurer, indeed, the insurer explicitly called upon the plaintiff to so rely when it instructed the plaintiff to contact an agent. In this way, if neither the language on the forms nor the agent with whom plaintiff spoke informed the plaintiff that a writing was required, then it cannot be said that said notice sufficiently apprised the plaintiff of how to go about procuring UM insurance.[4]
Further, the plaintiff has sworn via affidavit that she requested full coverage, which she believed included UM coverage. See Pl.'s Aff. at¶¶ 6, 10. Again, it would be perfectly reasonable for an insured to be able to request "full" coverage by telephone, which does include comprehensive and collision, and to thereafter expect, as in this case, that "full" coverage would include UM coverage. The defendant may not inform the plaintiff that coverage is available and not inform the plaintiff of how the coverage may be made available, and then rely on that omission as a basis for declining coverage.
However, it is not the province of this Court to resolve factual issues. There is no evidence about whether the plaintiff was told that a writing was required to effectuate her request. The resolution of this matter is left to the province of a finder of fact to determine whether the written notice on the forms, and perhaps given orally by the agent in the telephone call, was, in fact, sufficient "to notify [an insured] of the availability of uninsured/underinsured motorist coverage in the event of any policy endorsement, reinstatement, renewal, or replacement." When that issue is resolved, the declaration that the parties seek should require a relatively simple and straightforward analysis, particularly in light of the Rhode Island Supreme Court's opinion in Ferreira.
 Conclusion
Accordingly, finding genuine issues of material fact, this Court denies the defendant's motion for summary judgment. The plaintiff's motion for summary judgment is, likewise, denied. Counsel for the parties are directed to confer and to submit to this Court forthwith for entry an order that is in conformity with this decision.
[1] The statutory limits are set pursuant to G.L. 1956 §31-31-7.
[2] At the initial hearing, there was some debate as to whether or not the quoted language constituted a notification of the availability of UM/UIM coverage before renewing or amending the policy because the documents containing the language, the declaration sheets, were sent after the policy was sent and the premiums established. It appears that the quoted language was also contained in renewal notices sent prior to the time that the renewed policy was to become effective, March 3, 1998.
[3] The Bruhns are nonparties to the instant litigation.
[4] Additionally though not necessary to the resolution of the matter at bar, contract terms that are ambiguous are to be construed against the drafter, here, the defendant. See Judd Realty v. Tedesco, 400 A.2d 952
(R.I. 1979).