OPINION.
{¶ 1} Appellant Old Republic Insurance Company ("Old Republic") appeals the decision of the Stark County Court of Common Pleas that granted Appellees Peggy McCollam's, et al., motion for summary judgment and denied its motion for summary judgment. The following facts give rise to this appeal.
 {¶ 2} On March 24, 1996, Thomas Benedict, Jr. died as a result of an automobile/motorcycle accident. At the time of the accident, the decedent was a passenger on a motorcycle being operated by Wesley Bennett. Mr. Bennett did not have automobile liability insurance. John Alge operated the automobile involved in the accident. Mr. Alge had automobile insurance, through Westfield Insurance Company, with a liability limit amount of $100,000 per person, $300,000 per accident.
 {¶ 3} At the time of his death, the decedent was survived by his mother, Peggy McCollam; his father, Thomas Benedict, Sr.; his grandfather, Herbert Benedict; his grandmother, Lillian Benedict; and other relatives and next of kin. As the duly appointed fiduciary of the decedent's estate, Appellee Peggy McCollam settled, with the tortfeasor, John Alge, for Westfield Insurance Company's policy limit of $100,000. The Stark County Probate Court approved the settlement and distributed the $100,000 equally between Appellee Peggy McCollam and Appellee Thomas Benedict, Sr.
 {¶ 4} Thereafter, on July 5, 2002, Appellees Peggy McCollam, individually and as the Administrator of the Estate of Thomas Benedict, Jr., Thomas Benedict, Sr., and Herbert and Lillian Benedict filed a declaratory judgment action, pursuant to the Ohio Supreme Court's decision in Scott-Pontzer[1], seeking UM/UIM coverage under certain policies of insurance in effect on the date of the accident.[2] For purposes of this appeal, the policies under review were issued by Old Republic, to Detroit Diesel Corporation, Thomas Benedict, Sr.'s employer, on the date of the accident. These policies are as follows: a business auto policy which provided liability coverage in the limit amount of one million dollars; a garage operations policy which provided liability coverage in the limit amount of one million dollars; and a commercial general liability policy ("CGL") policy which provided liability coverage in the limit amount of one million dollars.
 {¶ 5} Appellees argued, in the trial court, that they were entitled to coverage under the policies issued by Old Republic because Old Republic did not have a valid and enforceable written offer and rejection or reduction of UM/UIM coverage for any of the coverages provided by Old Republic. Therefore, appellees concluded UM/UIM coverage arose by operation of law. The parties each filed motions for summary judgment.
 {¶ 6} On February 3, 2003, the trial court granted appellees' motion for summary judgment and denied Old Republic's motion for summary judgment. The trial court concluded Appellee Thomas Benedict, Sr. is entitled to recover, in his individual capacity, under Old Republic's policies issued to Detroit Diesel Corporation. Judgment Entry, Feb. 3, 2002, at 8. The trial court also ordered the matter to binding arbitration. Id. at 9.
 {¶ 7} Old Republic timely filed a notice of appeal and sets forth the following assignment of error for our consideration:
 {¶ 8} "I. The trial court erred in granting summary judgment to appellee Tom H. Benedict, Sr. on his claim for underinsured motorist coverage under the commercial package policy issued by Old Republic to his employer, Detroit Diesel."
 "Summary Judgment Standard" {¶ 9} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 10} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 11} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 12} It is based upon this standard that we review Old Republic's assignment of error.
 I {¶ 13} Old Republic sets forth five arguments in support of its sole assignment of error. In its first argument, Old Republic maintains its policy is a single policy of insurance subject, if at all, to only one offer of UM/UIM coverage. We disagree.
 {¶ 14} Old Republic contends former R.C. 3937.18 does not contemplate a remedy of multiple recovery of policy limits under a single auto policy. Instead, Old Republic interprets former R.C. 3937.18 to require that UM/UIM coverage need only be offered for any policy of motor vehicle liability insurance, not for every type of coverage that affords motor vehicle liability protection under a given policy. In support of this argument, Old Republic cites a Rhode Island Supreme Court case, Am.Universal Ins. Co. v. Russell (R.I. 1985), 490 A.2d 60.
 {¶ 15} The Russell case involved whether intrapolicy stacking would be permitted where uninsured motorist coverage arises by operation of law. In its decision, the court refused "* * * to condone intrapolicy `stacking' of uninsured-motorist coverage in this situation." Id. at 63. The court distinguished its decision from a previous decision, in Taftv. Cerwonka, (R.I. 1981), 433 A.2d 215, that permitted intrapolicy stacking on the basis that the policyholders paid two separate premiums on a policy that was silent as to whether stacking of coverages was permissible. Russell at 63.
 {¶ 16} We find the Russell decision is not applicable to the facts of the case sub judice. The issue Old Republic raises, in its first argument, concerns whether its Commercial Package Policy provides three separate and distinct insuring agreements requiring three separate offers of UM/UIM coverage pursuant to R.C. 3937.18. The Russell decision did not address this issue. Instead, it addressed whether intrapolicy stacking would be permitted where uninsured coverage arose by operation of law.
 {¶ 17} We have reviewed Old Republic's Commercial Package Policy. Although the policy is identified under one policy number and the separate insuring agreements are included under this policy number, we agree with the trial court's conclusion that the Commercial Package Policy contains three separate insuring agreements. The Commercial Package Policy provides three separate types of coverage: liability coverage for autos, liability coverage for garage operations and commercial general liability coverage. Further, the liability coverage for garage operations and commercial general liability both include, in a limited form, auto liability coverage. "Where motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided." Selander v. Erie Ins. Grp., 85 Ohio St.3d 541,1999-Ohio-287, at 544.
 {¶ 18} Accordingly, the trial court properly determined the Commercial Package Policy contains three separate and distinct insuring agreements.
 {¶ 19} In its second argument, Old Republic contends a beneficiary of the wrongful death estate is not entitled to an independent claim of UM/UIM coverage until all coverage available to the estate is exhausted. We disagree.
 {¶ 20} Old Republic maintains that only when the decedent's insurance is exhausted and insufficient may a wrongful death beneficiary pursue a separate claim under his or her own insurance policies. Therefore, the estate must first recover and allocate damages deriving from insurance coverage to the decedent's estate before the decedent's father has an independent claim for his wrongful death injuries. Not until the estate's coverage is exhausted is coverage under Old Republic's policy triggered, if at all.
 {¶ 21} We conclude the Ohio Supreme Court's decision in Moore v.State Auto Ins. Co., 88 Ohio St.3d 27, 2000-Ohio-264, establishes that Appellee Thomas Benedict, Sr. is entitled to maintain an independent UM/UIM claim in his individual capacity. In Moore, the Court stated, "R.C. 2125.01 recognizes a cause of action for wrongful death and R.C.2125.02(A)(1) acknowledges that parents of wrongful death victims are presumed to have suffered damages. Therefore, the parents of a wrongful death victim are legally entitled to recover damages from the tortfeasor responsible for their child's death." Id. at 31.
 {¶ 22} Based upon this interpretation of the wrongful death statute, the Court held that, "R.C. 3937.18(A)(1), as amended by Am.Sub.S.B. No. 20, does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer." Id. at syllabus. Accordingly, we conclude, pursuant to Moore, that Appellee Thomas Benedict, Sr. is presumed to have suffered damages, under the wrongful death statute, and therefore, is entitled to recover damages if he qualifies as an insured under Old Republic's policies.
 {¶ 23} Further, we find the issue premature as to whether Old Republic's coverages may be accessed prior to the exhaustion of all other UM/UIM coverages afforded the decedent's estate because the trial court has not decided the issue of allocation of coverages. Until damages are determined, the subject of allocation of coverages is premature and not ripe for our review.
 {¶ 24} In its third argument, Old Republic maintains the offer of UM/UIM coverage, to Detroit Diesel, was not required under its self-insured auto liability policy up to the first $250,000 of a given loss. We agree. Old Republic contends a separate indemnity agreement obligated Detroit Diesel to hold Old Republic harmless for the first $250,000 of liability coverage for autos, liability coverage for garage operations and commercial general liability coverage. As security for this agreement, Detroit Diesel provided Old Republic with irrevocable letters of credit. Therefore, Old Republic's coverage equaled $750,000 in excess of Detroit Diesel's per occurrence self-insured retention.
 {¶ 25} The first issue we must determine, under this argument, is whether the $250,000 deductible applied only to the CGL policy or whether the deductible also applied to the auto policy and garage operations policies. Old Republic claims the $250,000 deductible applies to all three policies. The CGL policy contains an endorsement titled "DEDUCTIBLE LIABILITY INSURANCE". The endorsement provides that,
 {¶ 26} "This endorsement modifies insurance provided under the following:
 "COMMERCIAL GENERAL LIABILITY COVERAGE PART PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART" {¶ 27} Section 1 of the endorsement provides as follows:
 {¶ 28} "Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to `each occurrence' for such coverages will be reduced by the amount of such deductible. `Aggregate' limits for such coverages shall not be reduced by the application of such deductible amount."
 {¶ 29} The schedule indicates a deductible of $250,000. In addition to the deductible endorsement contained in the CGL policy, Old Republic and Detroit Diesel entered into a separate Insurance Agreement effective January 1, 1992. According to Section 2 of the agreement, it "* * * applies to each and every one of the insurance coverages described in section 3 below."
 {¶ 30} Section 3 states that, "Old Republic will issue to Insured, * * *, Old Republic's standard workers' compensation and employers' liability insurance, Policy No. 0C001102102 and its standard automobile liability and comprehensive general liability insurance (occurrence coverage), Policy No. ML14805 * * *. The term of coverage under each of the Policies will extend to 12:01 a.m. on January 1, 1993, and to the expiration of renewals thereafter, if any. Coverage will be provided under the Policies in the amounts and with the retentions which are set forth in the Schedule A attached to and made a part of this Agreement. Coverage under any renewals of the Policies will be provided in the amounts and with the retentions as set forth in an Addendum to Schedule A."
 {¶ 31} Amendment #4 to the Insurance Agreement and revised Schedule A continue application of the agreement for the policy period effective January 1, 1996, through December 31, 1996, which is the policy period applicable to this loss. According to Amendment #4, Detroit Diesel was required to provide Old Republic with a letter of credit in the amount of $2,767,000. Schedule A, attached to Amendment #4, indicates, for auto liability coverage, a retention of $250,000, with a combined single limit of coverage in the amount of $1,000,000. The schedule also indicates, for general liability coverage and garage operations coverage, a retention of $250,000, with a combined single limit of coverage in the amount of $1,000,000.
 {¶ 32} In response, appellees refer solely to the deductible endorsement contained in the CGL policy and maintain the terms of the auto and garage operations coverages do not include deductible endorsements. Having reviewed the record in this matter, we conclude the $250,000 retention applies to all three policies issued by Old Republic. In reaching this conclusion, we rely upon the language contained in the deductible endorsement and the Insuring Agreement.
 {¶ 33} Next, we must determine whether Detroit Diesel is self-insured for the first $250,000 of any claim made under the auto, garage operations or CGL policies. Old Republic maintains R.C. 3937.18
does not apply to self-insurers. The Ohio Supreme Court reached this conclusion in Grange Mut. Cas. Co. v. Refiners Transport and TerminalCorp. (1986), 21 Ohio St.3d 47. In Grange, the Court concluded that "[t]he uninsured motorist provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals." Id. at syllabus. The Grange case involved the death of an employee, while driving a tanker truck in the course of his employment, owned by his employer, Refiners Transport and Terminal Corporation ("Refiners"). Id. at 47. Refiners met state financial responsibility requirements by utilizing a hybrid program consisting of a financial responsibility bond for the first $100,000 of loss coupled with excess insurance coverage, none of which contained uninsured motorist coverage. Id.
 {¶ 34} On appeal to the Ohio Supreme Court, the Court framed the issue before it as "whether an employer, who meets Ohio's financial responsibility laws other than by purchasing a contract of liability insurance, must comply with the requirements concerning uninsured motorist coverage contained in R.C. 3937.18 relative to employees injured in the course of employment while driving or occupying a vehicle owned by the employer." Id. at 48. In addressing this issue, the Court concluded that Refiners was not a "self-insurer" in the legal sense contemplated by R.C. 4509.45(D) and R.C. 4509.72. Id. at 49. However, in the practical sense, Refiners was self-insured because it was ultimately responsible under the term of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim. Id. Thus, as a bond principal, R.C. 3937.18 did not apply. Id. at 51.
 {¶ 35} We conclude the Supreme Court's decision, in Grange, is not dispositive of this issue on appeal because Grange did not address the issue of a retention and whether such a retention constitutes self-insurance. However, several decisions from this court have addressed the issue of whether a company may be partially self-insured. The first case to do so is Dalton v. The Travelers Ins. Co., Stark App. Nos. 2001CA00380, 2001CA00393, 2001CA00407, 2001CA00409, 2002-Ohio-7369. TheDalton decision involved numerous insurance companies. However, for purposes of this appeal, we will address two policies issued by National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National"). The policies were issued to the decedent's son's employer, Collins 
Aikman Corporation d.b.a The Akro Corporation ("Akro"). Id. at ¶ 6. The decedent's son sought coverage under these two policies pursuant to the Scott-Pontzer decision. Id. at ¶ 140. The first policy was a commercial automobile policy with limits of $2,000,000. Id. at ¶ 146. The second policy was a general liability policy with limits of $1,000,000. Id. The payment agreement made Collins responsible upon billing for each payment made under the policy, up to $500,000 for the commercial automobile policy and $1,000,000 for the general liability policy. Id. In order to secure the amounts that may be paid, Collins was required to provide a promissory note and a security acceptable as collateral. Id.
 {¶ 36} Plaintiff argued, on appeal, that the two policies were not fronting policies or self-insurance because National had neither a certificate of self-insurance nor a copy of an employer financial responsibility bond. Id. at ¶ 142. Relying upon the Grange
decision, supra, we determined "* * * our inquiry is whether National's policies make the employer, Collins, ultimately responsible under the terms of the agreement. Does Collins bare (sic) the risk of loss up to the retained amounts?" Id. at ¶ 145. We answered the question in the affirmative because "[i]n order to secure the amounts that may be paid, Collins * * * [was] required to provide a promissory note and a security acceptable as collateral." Id. at ¶ 146.
 {¶ 37} Thus, we concluded as follows:
 {¶ 38} "Based upon these documents, we find Collins in responsible for payments made to claimants under the policy up to the retained amounts. By agreeing to reimburse and provide a promissory note and security, Collins is self-insured up to the retained amounts because the risk of loss had not shifted away from Collins. Collins is self-insured up to $500,000 under the commercial automobile policy and up to the policy limit of $1,000,000 under the general liability policy. Collins is insured in the traditional sense for the remaining 1.5 million of the commercial automobile policy. R.C. 3937.18 does not apply to Collins and the National policies up to the retained amounts, but does apply to the 1.5 million." Id.
 {¶ 39} The second case to address the partially self-insured issue is Jordan v. Travelers Prop. Cas. Ins. Co., Stark App. No. 2002CA00248,2003-Ohio-1309. We found the facts of Jordan analogous to the Dalton
case. In Jordan, Travelers and Sally Beauty Company ("Sally Beauty"), the employer of the injured party's husband, entered into an agreement whereby Travelers would administer claims under Sally Beauty's $250,000 deductible and Sally Beauty would indemnify and hold Travelers harmless from and against any claims falling within the deductible. Id. at ¶ 55. Sally Beauty was required to provide Travelers with a letter of credit to secure Sally Beauty's obligations. Id. If Sally Beauty defaulted under the agreement, Travelers had the right to immediately terminate the partial fronting program and satisfy any amounts due by drawing upon the full amount of the letter of credit. Id.
 {¶ 40} We concluded Sally Beauty was self-insured for the following reasons:
 {¶ 41} "Because Sally Beauty agreed to reimburse the insurance company for payments made by the insurance company under the policy up to the retained amounts (or deductible) and to provide a Letter of Credit upon which Travelers could draw in the case of default, we find that Sally Beauty was self-insured for the amount of the deductible, or $250,000.00 Therefore, R.C. 3937.18 does not apply up to $250,000 but does apply to the amounts over $250,000.00 In other words, the UM/UIM coverage would be for damages after they exceed $250,000.00 and only to the extent the damages did not exceed the One Million Dollar limit of the commercial auto liability policy." Id. at ¶ 56.
 {¶ 42} Appellees cite our decision in German v. Therm-O-Disc.,Inc., Richland App. No. 01CA51-2, 2002-Ohio-1848, in support of their argument that Old Republic is required to provide UIM coverage, by operation of law, to Detroit Diesel up to the limit amount of one million dollars for each coverage. We agree with this argument. Our decision, inGerman, is not in conflict with our decisions in Dalton and Jordan.German involved a CGL policy with policy limits of $6,000,000 and a deductible of $2,000,000. Id. at 3. One of the issues for determination, in German, was whether the $2,000,000 deductible extended to the UIM coverage that arose by operation of law due to Thermo-O-Disc's status as a partial self-insurer. Id. As a partial self-insurer, we discussed the amount of UIM coverage it was obligated to offer. The German court explained:
 {¶ 43} "Assuming, arguendo, Therm-O-Disc is a self-insurer `in a practical sense,' such status would only apply up to the first $2,000,000 of liability, for which Therm-O-Disc would be responsible pursuant to the deductible. Any liability beyond $2,000,000 up to $6,000,000 would be covered under the Old Republic policy. Accordingly, we find Therm-O-Disc's status as a self-insurer `in a practical sense' for a portion of the coverage does not excuse Old Republic from offering UIM coverage up to $6,000,000. Old Republic was obligated to offer $6,000,000 in UIM coverage even though the amount was subject to a $2,000,000 deductible." Id. In reaching this conclusion, we stated that, "* * * the deductible provision at issue herein is a restriction on the commercial general liability coverage only, and does not extend to UIM coverage arising by operation of law." Id. Therefore, the UIM coverage was not subject to any deductible amount. Id.
 {¶ 44} Applying the above cited case law to the facts of this case, we reach the following conclusions. First, Detroit Diesel is partially self-insured for the first $250,000 of any claim. We reach this conclusion based upon the following provisions of the Insurance Agreement. Paragraph 8 of the agreement indicates that Detroit Diesel "* * * unconditionally and irrevocably agrees to indemnify and hold Old Republic harmless from any an all losses, costs and expenses which Old Republic may incur or suffer * * *." Insurance Agreement at p. 8.
 {¶ 45} Paragraph 10.1 of the Insurance Agreement addresses Letters of Credit. This provision provides that, "As security for its payment of all of the foregoing premiums, other charges and their adjustments, as well as for the indemnification obligations, and the loss and loss expense funding obligations described in section 11 below, Insured will provide to Old Republic one or more clean, unconditional, irrevocable letters of credit * * *." Insurance Agreement at p. 10.
 {¶ 46} Further, the Insurance Agreement, in effect on the date of the accident, provides that Detroit Diesel was required to provide a letter of credit in the amount of $2,767,000. Based upon the above sections of the Insurance Agreement, we conclude Detroit Diesel is self-insured up to the retention amount of $250,000.
 {¶ 47} Second, pursuant to our decision, in German, we conclude Old Republic is required to offer UM/UIM coverage, in the amount of $750,000, if it is determined that Appellee Benedict's damages exceed $250,000.
 {¶ 48} Old Republic's fourth argument is that if UM/UIM coverage is required to be offered under its policy, Appellee Benedict is not an insured to whom such coverage is owed. We disagree with this argument. In support of its argument, Old Republic refers to the "Employees as Insureds" endorsement. This endorsement provides that:
 {¶ 49} "The following is added to the LIABILITY COVERAGE WHO IS AN INSURED provision:
 {¶ 50} "Any employee of yours is an `insured' while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs."
 {¶ 51} Old Republic contends this endorsement is an extension or precondition of coverage and therefore, applies to all coverage, including any UM/UIM coverage implied by operation of law. Old Republic also argues this endorsement does not restrict coverage but, instead, expands coverage to include a limited class of employees, those employees operating a vehicle for company business. Thus, Old Republic concludes that because Appellee Benedict was not operating a vehicle for company business when the accident occurred, he is not within the class of employees insured under the policies.
 {¶ 52} Appellees respond that the language of the endorsement only applies to liability coverage and not UM coverage that arises by operation of law pursuant to the Ohio Supreme Court's decision in Scott-Pontzer. The Scott-Pontzer language referred to by appellees provides that:
 {¶ 53} "* * * Liberty Mutual's umbrella/excess insurance policy did restrict coverage to employees acting within the scope of their employment. However, we have already found that Liberty Mutual had failed to offer underinsured motorist coverage through the umbrella policy issued to Superior Dairy. Thus, any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage. See, e.g., Demetry v. Kim (1991), 72 Ohio App.3d 692,698, 595 N.E.2d 997, 1001. Therefore, there is no requirement in the umbrella policy that Pontzer had to be acting during the scope of his employment to qualify for underinsured motorist coverage. Therefore, appellant is entitled to underinsured motorist benefits under the Liberty Mutual umbrella policy as well. (Emphasis sic) Scott-Pontzer at 666.
 {¶ 54} We conclude the endorsement language does not modify the definition of a "Named Insured" such that the Scott-Pontzer analysis is inapplicable. The ambiguity referred to in Scott-Pontzer still exists because an endorsement to the auto coverage identifies the "Named Insured" as, "Detroit Diesel Corporation and any other entity as may now be constituted or hereafter formed or acquired, which comes under the Named Insured's direct or indirect control or over which the Named Insured assumes active management, including: * * *." This endorsement then proceeds to identify thirty-five companies as "Named Insureds." See Endorsement ML 1.
 {¶ 55} Under the Scott-Pontzer analysis, because the "Named Insureds" are corporations, employees are included since a corporation can act only by and through real live persons. Id. at 664. The Court further explained that, "It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." Id. Thus, the naming of the corporation is meaningless unless the coverage extends to some person or persons, including the corporation's employees. Id. Therefore, under this analysis, the fact that the "Employees as Insureds" endorsement modifies the definition of "Named Insured" does not change our analysis, under Scott-Pontzer, as Appellee Benedict, as an employee of Detroit Diesel, clearly qualifies as an "insured" under the definition of "Named Insured" contained in Old Republic's auto coverage policy. See Pelc v. Hartford Fire Ins. Co., Stark App. No. 2002CA00142, 2003-Ohio-764, at ¶ 63.
 {¶ 56} Old Republic also maintains, under this argument, that the ambiguity concerning who is an insured for UM/UIM coverage is removed by the "Drive Other Car Coverage-Broadened Coverage For Named Individuals" endorsement, which includes as named insureds "[a]ny executive officer or employee of the Named Insured [who] is furnished with a covered auto for personal use * * *." Pursuant to this endorsement, Old Republic concludes the Scott-Pontzer ambiguity does not exist because the policy covers persons who can occupy an automobile, suffer bodily injury or death, and operate a motor vehicle.
 {¶ 57} We have reviewed this argument, in numerous cases, and declined the application of the "Broadened Coverage" endorsement to remove the Scott-Pontzer ambiguity. In Still v. Indiana Ins. Co., Stark App. No. 2001CA00300, 2002-Ohio-1004, we held:
 {¶ 58} "Upon reviewing the automobile policy in the instant case, we fail to find that the endorsement to the policy including these two individuals distinguishes this case from Scott-Pontzer * * * in that the ambiguity still exists, i.e. the policy still lists the corporation as the named insured, thereby extending coverage to the corporation's employees." Id. at 3.
 {¶ 59} We have reached this same conclusion in Amore v. GrangeIns. Co., Richland App. No. 02CA75, 2003-Ohio-3208; Dalton v. LumbermensMut. Ins. Co., Stark App. No. 2002CA00198, 2003-Ohio-2897; Moore v.Hartford Fire Ins. Co., Delaware App. No. 02CAE-10-048, 2003-Ohio-2037;Heidt v. Federal Ins. Co., Stark App. No. 2002CA00314, 2003-Ohio-1785;Jordan v. Travelers Prop. Cas. Ins. Co., Stark App. No. 2002CA00248,2003-Ohio-1309; Pahler v. Motorists Mut. Ins. Co., Stark App. No. 2002CA00022, 2002-Ohio-5763; Burkhart v. CNA Ins. Co., Stark App. No. 2001CA00265, 2002-Ohio-903.
 {¶ 60} Accordingly based upon these previous decisions, we conclude the inclusion of any executive officer or employee of the named insured who is furnished a covered auto for personal use does not remove the Scott-Pontzer ambiguity.
 {¶ 61} It its final argument, Old Republic contends the trial court erred when it ordered appellees' case, against Old Republic, to binding arbitration because appellees never argued for binding arbitration, against Old Republic, and Old Republic's policies do not require binding arbitration. We agree.
 {¶ 62} We recognize that Ohio courts encourage arbitration to settle disputes. ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498, 500,1998-Ohio-612. However, "[a]rbitration is a matter of contract and, in spite of the strong policy in its favor, a party cannot be compelled to arbitrate any dispute which he has not agreed to submit." Schroeder v.Shearson, Lehman Hutton, Inc. (Apr. 25, 1991), Cuyahoga App. No. 60236, at 7, citing Teramor v. Rodice Corp. (1987), 40 Ohio App.3d 39,40.
 {¶ 63} Accordingly, we conclude the trial court erred when it ordered Old Republic to binding arbitration because appellees did not request binding arbitration, against Old Republic, in the trial court and Old Republic's policies do not require binding arbitration.
 {¶ 64} Old Republic's sole assignment of error is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.
 {¶ 65} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Wise, J. and Farmer, J., concur.
Hoffman, P.J., concurs in part and dissents in part.
[1] Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292.
[2] In addition, appellees sought coverage under a business auto policy, CGL policy and umbrella policy issued by Travelers Insurance Company to Central Allied, the employer of Peggy McCollam, and a personal auto policy issued by Motorists Mutual Insurance Company to Lillian and Herbert Benedict.